**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF ARKANSAS**
**NORTHERN DIVISION AT JONESBORO**

| | |
|---|---|
| EVOLVE BANK & TRUST, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | ) Case No.3:20-cv-00258-DPM |
| | ) |
| HECTOR BOVE a/k/a HECTOR | ) |
| ESTEBAN BOVE ARMAND UGON, | ) |
| RAVEN AGRICULTURE, LLC, | ) |
| DELTA BAY AGRI, LLC, and | ) |
| TOGO FARMING, LLC, | ) |
| | ) |
|     Defendants. | ) |

## AMENDED COMPLAINT

Comes now Evolve Bank & Trust ("Evolve") and files its Amended Complaint under

Rule 15(a)(1)(B) of the Federal Rules of Civil Procedure against Hector Bove a/k/a Hector

Esteban Bove Armand Ugon ("Bove"), Raven Agriculture, LLC ("Raven"), Delta Bay Agri,

LLC ("Delta Bay") and TOGO Farming, LLC ("TOGO") stating as follows:

### GENERAL NATURE OF THE LAWSUIT

1. Beginning in October 2019 and continuing until shortly prior to the filing of this lawsuit,

   Defendants engaged in a fraudulent scheme to remotely deposit checks that they had no

   authority or right to deposit.  Once Evolve credited their accounts with the amounts listed on

   the improperly deposited checks, Defendants withdrew the funds from their accounts leaving

   Evolve with liability to third-parties which had rights in the funds represented by the

   improperly remotely deposited checks.

2.  Defendant Bove directed this scheme through Raven, Delta Bay, TOGO and another entity owned or controlled by him known as Delta Bay Investments, LLC ("DBI").

3.  Defendant Bove then used the unlawfully obtained proceeds to launder the money by shifting the funds for the purpose of purchasing real property in Arkansas.  The real property owned by Bove is the continuing result of this scheme and constitutes a continuing fraud and injury to Evolve as the unlawfully obtained proceeds were used to purchase the properties along with additional loans obtained from Evolve prior to Evolve discovering the scheme.

4.  As set forth herein, these acts constitute wire fraud, bank fraud and a violation of the RICO statutes, 18 U.S.C. §§ 1341, 1344, 1962(c) and 1962(d).

5.  In total, Defendants defrauded Evolve in an amount greater than $839,207.60 (an amount equal to the total checks improperly cashed and withdrawn and the deficiencies on the mortgages which would have not otherwise been granted).

## PARTIES

6.  Evolve Bank & Trust is an Arkansas Corporation with its principal place of business located at 6070 Poplar Ave., Ste.200, Memphis, TN 38119.  Evolve offers banking and financial services.  Evolve has branches throughout Arkansas including branches in Wynne and Jonesboro.

7.  Bove is an individual who resides at 3702 Woodsprings Road, Jonesboro, AR 72404.  Bove is also known as Hector Esteban Bove Armand Ugon.

8.  Defendant Raven is an Arkansas limited liability company with its principal place of business located at 2784 Highway 163, Cherry Valley, AR 72324.  Raven may be served through its registered agent Bove.  Upon information and belief, one or more members of Raven are Arkansas citizens.

9.  Defendant Delta Bay is an Arkansas limited liability company with its principal place of business located at 2784 Highway 163, Cherry Valley, AR 72324.  Delta Bay may be served through its registered agent Bove.  Upon information and belief, one or more members of Delta Bay are Arkansas citizens.

10. Defendant TOGO is an Arkansas limited liability company with its principal place of business located at 2784 Highway 163, Cherry Valley, AR 72324.  TOGO may be served through its registered agent Bove.  Upon information and belief, one or more members of TOGO are Arkansas citizens.

## JURISDICTION AND VENUE

11. Jurisdiction is proper before this Court pursuant to 28 U.S.C. § 1331 (federal question) and 18 U.S.C. § 1964 (RICO).

12. This Court also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over the state tort claims asserted herein as the operative facts of the RICO claims and the state law claims overlap and share a common core nucleus.

13. This Court has personal jurisdiction over all parties to this case as all Defendants reside in the jurisdictional boundaries of this Court and the acts and omissions at issue in this case all took place in this District.

14. Venue is proper before this Court pursuant to 28 U.S.C. § 1391 and 18 U.S.C. § 1965(a) as the events which give rise to this lawsuit took place in this District and the Defendants are residents of this District.

## FACTS COMMON TO ALL COUNTS

15. Bove is a farmer with extensive operations in Cross County.

16. Bove farms under one or more the Defendant limited liability companies and other unnamed limited liability companies.

17. Bove is originally from Uruguay.

18. Bove claims a net worth of millions including allegedly owning extensive land holdings in Uruguay.

19. Bove provided financial disclosures to Evolve that claims a personal net worth in the millions with few current liabilities.

20. Bove provided these disclosures to Evolve as part of his effort to obtain loans in early 2019 to purchase real property in Arkansas originally in the name of DBI later switched to Bove personally.

21. The financial disclosure appears to have been fraudulent and at the very least significantly under reported Bove's liabilities to others.  Evolve relied upon that financial disclosure when making the loans it made to Bove.

22. For several years. there has been a banking relationship between Bove and Evolve including the various limited liability companies utilized by Bove.

23. On April 18, 2016, Bove opened an account with Evolve's Wynne branch for Delta Bay.

24. Upon opening the account for Delta Bay, Bove executed the Account Agreement attached here to as Ex. 1.

25. On November 28, 2016, Bove opened an account with Evolve's Wynne branch for Raven.

26. Upon opening the account for Raven, Bove executed the Account Agreement attached here to as Ex. 2.

27. On February 28, 2017, Bove opened an account with Evolve's Wynne branch for TOGO.

28. Upon opening the account for TOGO, Bove executed the Account Agreement attached here to as Ex. 3.

29. On November 8, 2018, Bove opened a personal account with Evolve's Wynne branch.

30. Upon opening a personal account, Bove executed the Account Agreement attached here to as Ex. 4.

31. Each of the Account Agreements executed by Bove for himself and for Delta Bay, Raven and TOGO expressly adopts and incorporates the Evolve Terms & Conditions.

32. A true and correct copy of the Evolve Terms & Conditions is attached hereto as Ex. 5.

33. In Section 3 of the Evolve Terms & Conditions, Defendants agreed:

"You will be liable for our costs as well as for our reasonable attorneys' fees, to the extent permitted by law, whether incurred as a result of collection or in any other dispute involving your account."

34. In Section 4 of the Evolve Terms & Conditions, Defendants agreed:

"Unless prohibited by law, we also reserve the right to charge back to your account the amount of any item deposited to your account or cashed by you which was initially paid by the payor bank and which is later returned to us due to an allegedly forced, unauthorized or missing indorsement, claim of alteration, encoding error, counterfeit cashier's check or other problem which in our judgment justifies reversal of credit."

35. In Section 16 of the Evolve Terms & Conditions, Defendants agreed:

"We process items mechanically by relying solely on the information encoded in magnetic ink along the bottom of the items.  This means we do not individually examine all of your items to determine if the item is properly completed, signed and indorsed or to determine if it contains any information other than what is encoded in magnetic ink.  You

agree that we have exercised ordinary care if our automated processing is consistent with general banking practice, even though we do not inspect each item. . . . We are not responsible for any unauthorized signature or alteration that would not be identified by a reasonable inspection of the item.  Using an automated process helps us keep costs down for you and all account holders."

36. In addition to establishing various bank accounts with Evolve between 2016 and 2018, Bove, through Raven, entered into an eTeller Remote Deposit Services Agreement ("Remote Deposit Agreement") with Evolve in September 2016.

37. A true and correct copy of the Remote Deposit Agreement is attached hereto as Ex. 6.

38. Through the Remote Deposit Agreement, Bove and Raven had the ability to scan in and deposit checks written to Raven without having to go to one of Evolve's brick and mortar branches.

39. The ability to remotely deposit checks becomes a critical part of Defendants' fraudulent scheme.

40. In the Remote Deposit Agreement, Defendants Bove and Raven agreed that, "Company shall not submit, or allow to be submitted to Evolve, any forged, altered or fraudulent check."

41. In the Remote Deposit Agreement, Defendants Bove and Raven agreed that, "If items previously deposited by Company are dishonored and returned unpaid by the drawee bank, Company understands and agrees that Evolve may charge back an image of the item to the Settlement Account.  Dishonored items are the sole responsibility of Company."

42. In the Remote Deposit Agreement, Defendants Bove and Raven agreed that:

> Regarding items, Company represents and warrants to Evolve:  (i) Company shall only deposit items that are authorized by this Agreement . . . (iii) the item contains all endorsements applied by the parties that previously handled the check in any form for forward collection or return; (iv) no subsequent transferee, including but

not limited to Evolve, a collecting or returning bank, drawer, drawee, payee or
endorser, will be asked to pay the original item from which an image was created
or duplication made (whether paper or electronic); (v) no subsequent transferees
of an item, including but not limited to Evolve, a collecting or returning bank,
drawer, drawee, payee or endorser, shall sustain a loss as a result of the fact that
an image of an item was presented for payment or returned instead of the original
item . . .

43. In the Remote Deposit Agreement, Defendants Bove and Raven agreed that it would be a

material breach of the Remote Deposit Agreement if, "any representation or warranty by a

Party becomes false or misleading in any material way respect as of the date made or at any

time during the term of this Agreement."

44. In the Remote Deposit Agreement, Defendants Bove and Raven agreed that:

In addition to other indemnification and liability provisions elsewhere in this
Agreement, Company will be liable for, hold harmless and indemnify Evolve, its
licensors and providers of Services, and its and their respective directors, officers,
shareholders, employees and agents, from and against all claims, costs, damages,
losses and expenses, including reasonable attorneys' fees and other legal expenses
("Damages") reasonably incurred to the extent arising from or in connection with
Company's responsibilities under this Agreement or receipt of Services,
including, without limitation, (i) the wrongful acts or omissions of Company, or
any person acting on Company's behalf in connection with the Company's use of
Services under this Agreement, including without limitation (a) the breach by
Company of any provision, representation or warranty of this Agreement, (b) the
negligence or willful misconduct (whether  by act or omission) of Company its
customers or any third party on behalf of the Company, (c) any misuse of the
Services by Company, or a third party within the control or on behalf of Company
or (d) the failure of Company to comply with applicable laws and rules;  . . . (iii)
any claims, loss or damage resulting from Company's breach of, or failure to
perform in accordance with the terms of this Agreement.

45. Pursuant to Ark. Code Ann.§§ 4-4-207 and/or 208, when Defendants deposited checks with

Evolve, whether through the Remote Deposit Agreement or in person, Defendants made

transfer or presentment warranties that include but are not limited to a warranty and

representation that they are the person or entity authorized to deposit the instrument and that

all signatures necessary to cash, deposit or transfer the check are present at the time the check is cashed, deposited or otherwise transferred.

46. In 2019, Defendants through Bove pledged certain crops as security for one or more loans they obtained from another financial institution, Farm Credit MidSouth ("Farm Credit").

47. Beginning in 2019 and extending into 2020, Defendants received a series of payments made by check that were made payable to Raven and Farm Credit, TOGO and Farm Credit, and Delta Bay and Farm Credit.

48. These checks were made jointly payable to one or more Defendants and Farm Credit because of the security interest that Farm Credit had in the crops related to these payments.

49. Had Defendants gone to a brick and mortar branch of Evolve or any other brick and mortar branch of a bank, they would not have been able to cash and deposit these checks without the signature and approval of Farm Credit.

50. Unknown to Evolve, Defendants were in financial trouble as of the fall of 2019.

51. Between October 10, 2019 and June 19, 2020, Defendants fraudulently deposited a total of eleven checks that were jointly payable to one or more of the Defendants and Farm Credit. Those eleven checks are:

| Date | Amount | Payee |
|------|--------|-------|
| 10/10/2019 | $13,920.26 | Raven and Farm Credit |
| 10/17/2019 | $9,420.61 | TOGO and Farm Credit |
| 11/7/2019 | $94,227.31 | Delta Bay and Farm Credit |
| 11/21/2019 | $228,047.66 | Delta Bay and Farm Credit |
| 1/1/2020 | $9,797.49 | Delta Bay and Farm Credit |
| 2/5/2020 | $15,592.84 | Delta Bay and Farm Credit |
| 2/13/2020 | $10,877.05 | Delta Bay and Farm Credit |
| 3/11/2020 | $57,571.74 | Delta Bay and Farm Credit |
| 5/18/2020 | $20,945.91 | Delta Bay and Farm Credit |
| 6/15/2020 | $9,770.10 | Raven and Farm Credit |
| 6/19/2020 | $36,910.90 | Raven and Farm Credit |

Total          $507,081.87

52. A true and correct copy of the images of those eleven checks are attached hereto as Ex. 7.

53. At no time did Bove or any other Defendant alert Evolve to the fact that Farm Credit's indorsement was missing from these checks.

54. When Bove and the other Defendants deposited these checks, they breached their transfer and presentment warranties because they lacked necessary indorsements to deposit these checks.

55. Although the Remote Deposit Agreement is just between Raven and Evolve, Bove utilized the Remote Deposit Agreement to deposit checks intended for TOGO, Delta Bay, Raven, and of course Farm Credit.

56. In July 2020, Farm Credit notified Evolve of this issue.

57. Evolve has investigated the claims and has determined that the checks should have never been deposited or cashed without Farm Credit's indorsement.

58. Bove and the other Defendants withdrew the deposited funds prior to Farm Credit's notice to Evolve.

59. Evolve sent written demand to Bove and the other Defendants.

60. None of the Defendants has responded to Evolve's demand or repaid Evolve for the $507,081.87 in fraudulently deposited checks.

61. In the late fall of 2018, Evolve was unaware that this fraudulent check scheme had begun.

62. Unknown to Evolve, Bove was taking the proceeds from the unlawfully deposited checks and funneling that cash to the purchase of real property.

63. In 2019, Bove applied with Evolve for a loan to purchase real property in Arkansas.

64. As part of that loan process, Bove made financial disclosures to Evolve as to his financial position and the down payment that was going to be made for the loan.

65. Those financial disclosures intentionally and knowingly overstated assets by including the cash that was not lawfully Bove's.

66. Those financial disclosures also understated Bove's liabilities to others including Farm Credit MidSouth.

67. Evolve reasonably relied upon those financial disclosures in making the loans it made to Bove.

68. Evolve made loan number **5624 in the amount of $208,000 to Bove on December 16, 2019 for the purchase of 5 CR 3951, Wynne, AR 72396.

69. Evolve would not have made this loan had Bove provided true and correct financial disclosures to Evolve.

70. Evolve made loan number **6291 in the amount of $345,960 to Bove on February 14, 2020 for the purchase of 5000, 5004 and 5008 Bedrock Drive, Jonesboro, AR 72404.

71. Evolve would not have made this loan had Bove provided true and correct financial disclosures to Evolve.

72. The purchases of the Cross County and Jonesboro properties was originally done through DBI but was later changed to be an individual purchase by Bove.

73. Upon discovering the unlawful source of the funds used to make these purchases and the fraudulent disclosures made to secure these loans, Evolve exercised its right under the loans and promissory notes to demand immediate payment of loans **5624 and **6291.

74. Evolve's demand for immediate payment was made via certified mail on August 21, 2020. (Exhibit 8).

75. As of the date of this Amended Complaint, Bove has fully repaid loan **5624 but has not repaid loan **6291.

76. The balance of principal in and interest owed on loan **6291 as of April 14, 2021 is $33,603.80.

77. Farm Credit MidSouth has now threatened suit against Evolve if Evolve does not pay in full the funds which Bove and the other defendants unlawfully deposited in their accounts at Evolve.

78. Bove's failure to repay loan 886291 in full upon receiving a demand for repayment is a breach of the note and thus Evolve has been presently damaged in the amount outstanding on that note.

79. Farm Credit MidSouth has communicated that it will first try to recover the lost funds from Bove and the entities he controls but has also clearly indicated that there will be a deficiency that they cannot collect and that Evolve will be responsible for payment of the deficiency. Thus, the amount of liability to Farm Credit MidSouth has not yet been fully liquidated to a set amount but it presently exists and is believed to be an amount significantly in excess of $75,000.

80. Evolve has further currently been damaged as a result of Defendants' actions by incurring defense costs in responding to and dealing with the fraud perpetrated by Bove and the entities he controls as well as the claims by Farm Credit MidSouth against Evolve.

81. Bove and the other defendants essentially pulled all or substantially all of the unlawfully deposited funds from the accounts such that there is insufficient money in the accounts to pay Farm Credit MidSouth's demands.

82. Furthermore, there is concern as to whether the real property backing the loans made to Bove will be sold for sufficient funds to cover the loans made.

83. Thus, Evolve has been damaged not only in the amount of the unlawfully deposited checks but also in the likely loss on the loans it would have never made had true and complete financial disclosures been made.

## CAUSES OF ACTION

### CAUSE NO. 1 – RICO 18 U.S.C. § 1962(c)

84. Evolve incorporates and restates as if fully set forth herein the allegations of the preceding paragraphs of this Complaint.

85. This count is against Defendant Bove.  Bove is a "person" within the definition of the RICO statutes.

86. Raven, Delta Bay, TOGO and DBI are operated by Bove as an enterprise with a common address, a common physical base of operations and shared employees.

87. Bove, Raven, Delta Bay and TOGO's business impacts interstate commerce in that they are a farming operation whose inputs including seeds, fertilizer and chemicals pass in interstate commerce.  Moreover, the Remote Deposit Agreement has funds moving in interstate commerce between the enterprise's base of operations in Cross County, AR and Evolve's operations base in Memphis, TN.  As the enterprise remotely deposited checks and then withdrew the funds, the funds moved from Arkansas to Tennessee and then back to Arkansas.  Similarly, the proceeds from the loan funding from Evolve's Memphis, TN operations went into loans backed by Arkansas real property.

88. Bove operated the enterprise (Raven, Delta Bay, TOGO and DBI) through a pattern of racketeering activity – namely wire fraud and bank fraud.  Bove directed Raven, Delta Bay

and TOGO to utilize Raven's Remote Deposit capabilities to fraudulently and improperly deposit checks that they knew they could not deposit and then withdrew those funds from Evolve all for the purpose of intentionally defrauding Evolve.

89. Bove then directed the unlawful proceeds from the enterprise into the additional scheme of using those funds to obtain loans from Evolve and purchase real property.

90. Defendant Bove participated in each and every one of the eleven acts of wire fraud and bank fraud by allowing the eleven checks to be improperly and fraudulently deposited utilizing the Remote Deposit Agreement between Raven and Evolve.

91. These eleven acts of wire fraud and bank fraud are multiple related acts of fraud.

92. In each of the eleven instances where a fraudulent check was improperly deposited and then withdrawn, Bove or others at his direction scanned in an image of the checks and then used the wires/interstate internet connections to cause the funds represented on those checks to move from a payee bank to Evolve's servers in Memphis.  They then used the wires to withdraw those funds from their accounts at Evolve knowing that they were not entitled to that payment.

93. This was not an isolated act but was rather a scheme intended to defraud Evolve because these checks could not be cashed, and the funds withdrawn in any other way.

94.  Had Bove taken these checks to any branch of any bank in person, they would not have otherwise been able to deposit and then withdraw the funds without Farm Credit's approval and indorsement and Farm Credit would have insisted that their loans be satisfied by the proceeds of these checks.

95. Bove thus knew and intended to commit wire fraud and bank fraud as a method to get around having to obtain Farm Credit's approval to negotiate the checks.

96. Given the inability to deposit or cash these checks by other means without Farm Credit's prior approval, it was foreseeable that the wires would be used to commit this fraud.

97. The acts set forth above constitute a pattern of racketeering activity pursuant to 18 U.S.C. § 1961(5).

98. These acts of wire fraud and bank fraud are related and continuous in that Evolve remains liable for the checks and Bove and his enterprise have continued to benefit from the scheme and have not repaid the sums owed.

99. This scheme is further continuous in that the proceeds from these bank accounts were then used in a second related scheme:  fraudulent mortgage applications using the funds obtained from the unlawfully cashed checks.

100. Upon information, Bove then directed the funds obtained through the check cashing to move from Raven, Delta Bay and TOGO to originally to DBI and then for his personal use in purchasing the properties in Cross and Craighead Counties.

101. Bove approached Evolve about making mortgage loans to Bove for property in Cross and Criaghead counties.

102. Those property purchases were originally through DBI as the purchaser.

103. As part of the process to obtain mortgage loans, Evolve asked for financial disclosures from Bove.

104. Bove created financial disclosures that were knowingly false and fraudulent to defraud and mislead Evolve into making mortgage loans.

105. The financial disclosures were false, incomplete and fraudulent because they overstated assets, understated liabilities, failed to disclose that assets listed for Bove included the unlawfully obtained cash and otherwise failed to provide a fair and accurate picture of

Bove's financial position.

106.　　　　　In reasonable reliance on the financial disclosures made by Bove, Evolve made mortgage backed loans for the properties in Cross and Craighead counties. The first loan was made on December 16, 2019 and the second was made on February 14, 2020.

107.　　　　　Evolve would not have made either loan had it known the nature of Bove's financial position or known that the funds being used were unlawfully obtained from the check scheme set forth above.

108.　　　　　This second scheme was committed through acts of bank fraud in violation of 18 U.S.C. § 1344.

109.　　　　　This is an open-ended scheme as the properties obtained through this fraudulent scheme are still subject to mortgages held by Evolve but may not have sufficient value to support the debt on the properties.

110.　　　　　This second related scheme may also constitute money laundering in violation of 18 U.S.C. § 1957 in that unlawfully obtained funds were put into an otherwise legitimate enterprise to "clean" the money.

111.　　　　　Evolve has suffered a direct injury to its business as a result of this pattern of wire fraud, bank fraud and money laundering in that Evolve credited Defendants' accounts the amounts of the improperly and fraudulent cashed checks, those accounts were effectively drained to near zero, despite demand for repayment Bove has not caused the funds to repaid to Evolve and Evolve is now liable to Farm Credit Midsouth for these same funds.

112.　　　　　Farm Credit has made demand on Evolve to repay the amounts credited to Defendants' accounts and pursuant to UCC Article 4, Evolve will be liable to pay those amounts.

15

113.     Unless Defendants are forced to repay these amounts, Evolve would then be damaged in the amount of the improperly deposited and cashed checks.

114.     Evolve has further been damaged by making real estate loans to related businesses based on fraudulent financial disclosures and funds co-mingled with the fraudulent proceeds taken from Defendants' accounts as a result of the fraudulent check scheme.

115.     Evolve was reasonable in its reliance upon Defendants use of the Remote Deposit Agreement for several reasons.

116.     First, Evolve had a multi-year history with Raven and Bove and had not previously had any issue with fraudulent or improper remote deposit checks.  Prior to October 2019, Raven and Bove behaved in a commercially reasonable manner.

117.     Second, as set forth in the Account Agreements and the Remote Deposit Agreements, it is no longer possible for any bank to examine the image of the majority of remotely deposited checks to determine if the signatures thereon are the signatures needed to properly indorse, deposit or negotiate a check.  Rather, the agreements between Defendants and Evolve all state that Evolve is not and cannot look at each check such that if a check is improperly deposited, the amount will be charged back against the account.

118.     It would cost Evolve and any customer banking with it substantially more to examine each and every remotely imaged check.  That is true as to Evolve and all other banking institutions.

119.     Defendants knew Evolve would not be looking at each image and took advantage of that situation to defraud Evolve and benefit themselves.

120.     Evolve prays that this Court enter judgment against Bove in the amount of the fraudulent deposited and withdrawn checks the deficiency on the fraudulently obtained loans

16

(after the properties are sold at a commercially reasonable sale), treble damages and attorney's fees.

121.        Evolve did not know of this scheme to engage in check fraud or bank fraud until after receiving notice from Farm Credit MidSouth and further investigating the transactions committed by Bove through his enterprise.

## CAUSE NO. 2 - FRAUD

122.    Evolve incorporates and restates as if fully set forth herein the allegations of the preceding paragraphs of this Complaint.

123.    Defendants Bove and Raven owed a duty Evolve to utilize the Remote Deposit Agreement in compliance with the terms of that Agreement and in accordance with the law regarding transfer, deposit and presentment of checks.

124.    Defendants Bove and Raven were barred from depositing any check that lacked all required indorsements.

125.    Defendants Bove and Raven were obligated to make a warranty of transfer and presentment as set out in Ark. Code Ann. §§ 4-4-207 and 208 in order to deposit a check and then withdraw those funds.

126.    When Bove and Raven made the fraudulent check deposits set out herein, they did so making an affirmative representation that they were authorized to negotiate the checks and had all required indorsements.

127.    Bove and Raven knew that the checks set forth herein lacked all required indorsements and that they lacked the authority to negotiate the checks without the written permission of Farm Credit.

128.    Bove and Raven intentionally misrepresented to Evolve that these checks were
authorized and contained all necessary indorsements.

129.    Bove and Raven knew that Evolve would rely upon the transfer and presentment
warranties made by them when remotely depositing the checks and intended Evolve to rely
upon the same to Evolve's detriment.

130.    Evolve's reliance upon the transfer and presentation warranties made by Defendants was
reasonable for several reasons.  First, Bove and Raven entered into the Remote Deposit
Agreement in 2016 and for the balance of 2016, all of 2017, all of 2018 and most of 2019,
neither Bove nor Raven had taken any action or failed to take an action that would have put
Evolve on notice that they would later engage in fraud.  Second, Bove provided a personal
financial disclosure in 2019 that did not show any financial distress.  Third, as set forth in
Evolve's account agreements and Remote Deposit Agreement, Evolve (like many other
banks) does not examine each and every check presented to it remotely or electronically.
Rather, checks are routinely processed off the code strip at the bottom of a check.  It would
be too costly to examine each and every check when there had been no prior notice of any
issue.

131.    Bove's and Raven's fraudulent check deposit/negotiation was not an isolated error.

132.    Bove and Raven engaged in this scheme for approximately eight months and did so at the
same time Bove was misrepresenting his financial condition in order to secure loans for the
purchase of real estate.

133.    Defendants Delta Bay and TOGO are liable for this fraud because they are controlled and
run by Bove and because they received the proceeds of these fraudulent banking transactions.

134.    Defendants not only fraudulent deposited the checks, they then withdrew the improperly received funds and have failed to repay Evolve for the fraudulent negotiated checks.

135.    Defendant Bove further defrauded Evolve by applying for and obtaining two loans based on fraudulent financial disclosures.

136.    Bove knew that he was supposed to provide accurate financial disclosures when applying for loans.

137.    Bove overstated his assets, understated his liabilities and failed to disclose that the funds being used for the loans came from the unlawful check scheme.

138.    Evolve was reasonable relying on the financial disclosures provided by Bove because at that point, Bove had not defaulted on any financial obligation and had otherwise acted in a commercially reasonable manner.  Evolve and Bove had a relationship as bank and customer for a few years prior to the loan applications.

139.    As a result of this fraud, Evolve has been damaged in an amount at least $839,207.60.

140.    Evolve prays for an award of compensatory and punitive damages against all Defendants jointly and severally.

### CAUSE NO. 3 – ARK. CODE ANN. §§ 4-4-207 AND/OR 208.

141.    Evolve incorporates and restates as if fully set forth herein the allegations of the preceding paragraphs of this Complaint.

142.    Defendants breached their transfer and presentment warranties when depositing the eleven checks set forth herein because they did not have the authority to transfer or deposit the checks and lacked all required indorsements.

143.    UCC Article 4 – Sections 207 and 208 provide a cause of action for breach of these warranties.

144.    Evolve prays for an award of compensatory damages in an amount at least $507,081.87

against all Defendants jointly and severally as well as all other relief to which they may be

entitled under either Section 207 or 208 including reasonable fees, costs, and/or interest.

### CAUSE NO. 4 – ARK. CODE ANN. § 16-118-107

145.    Evolve incorporates and restates as if fully set forth herein the allegations of the

preceding paragraphs of this Complaint.

146.    By using the Remote Deposit Agreement as the vehicle for fraudulently depositing these

checks, Defendants utilized computers and the wires to commit this fraud.

147.    In the case of these eleven checks, Defendants used a computer/digital camera to scan in

an image of the check and then transmitted that image via the internet and the interstate wires

to Evolve, whose corporate headquarters are located in Tennessee.

148.    Ark. Code Ann. § 5-41-103 defines computer fraud as, "a person commits computer

fraud if the person intentionally access or causes to be accessed any computer, computer

system, computer network, or any part of a computer, computer system, or computer network

for the purpose of: (1) devising or executing any scheme or artifice to defraud or extort; or

(2) obtaining money, property, or a service with a false or fraudulent intent, representation or

promise." Computer fraud is a class D felony in Arkansas.

149.    As set forth above, Defendants acts fall squarely in the definition of computer fraud.

150.    Pursuant to Ark. Code Ann. § 16-118-107, a crime victim may bring a private cause of

action against the person or entities which committed the felonious act and may recover

reasonable attorneys' fees and costs.

20

151.    Evolve is the victim of computer fraud committed by Defendants and prays for

compensatory damages and a recovery of costs and fees pursuant to Ark. Code Ann. § 16-

118-107.

## CAUSE NO. 5 – CONVERSION

152.    Evolve incorporates and restates as if fully set forth herein the allegations of the

preceding paragraphs of this Complaint.

153.    Defendants fraudulent check scheme also amounts to conversion.

154.    Defendants had no legal right to unilaterally deposit or negotiate the eleven checks set

forth herein.

155.    Upon receiving credit in their accounts for the funds represented by these eleven checks,

Defendants them improperly converted the funds by withdrawing the amounts.

156.    Evolve is now left to account for this conversion including but not limited to paying Farm

Credit for amounts owed on these eleven checks.

157.    Evolve has thus been damaged by Defendants conversion in an amount at least

$507,081.87 and prays for an award of compensatory and punitive damages for these

fraudulent and intentional acts.

## CAUSE NO. 6 – BREACH OF THE ACCOUNT AGREEMENTS

158.    Evolve incorporates and restates as if fully set forth herein the allegations of the

preceding paragraphs of this Complaint.

159.    Defendants and Evolve entered into the account agreements set forth herein.

160.    The account agreements along with the Evolve Terms & Conditions constitute a valid

and enforceable contract.

161.   Those account agreements state that Evolve may charge back to the accounts any amounts improperly deposited therein.

162.   Evolve cannot charge back the amounts of the fraudulent deposited and cashed checks because Defendants have drained those accounts down to de minimis levels.

163.   Evolve has made a demand for repayment of the amounts improperly credited to these accounts.

164.   Defendants have failed to repay the improperly credited amounts and that failure to repay is a breach of the account agreements.

165.   Evolve prays for an award of compensatory damages in the amounts of the eleven checks set forth herein and improperly credited to each account as well as an award of fees and costs pursuant to the account agreements as well as Ark. Code Ann. § 16-22-308.

## CAUSE NO. 7 – BREACH OF THE REMOTE DEPOSIT AGREEMENT

166.   Evolve incorporates and restates as if fully set forth herein the allegations of the preceding paragraphs of this Complaint.

167.   The Remote Deposit Agreement between Raven and Evolve constitutes a valid and enforceable contract.

168.   Pursuant to the Remote Deposit Agreement neither Raven nor Bove were authorized to remotely deposit checks over which Defendants did not have complete authority to negotiate, transfer or otherwise deposit them.

169.   Pursuant to the Remote Deposit Agreement, Raven is liable to refund the funds that were improperly credited to Defendants' accounts.

170.   Evolve has made demand upon Defendants to repay the sums credited to their accounts and then subsequently withdrawn.

171.    Defendants have refused to acknowledge that they improperly deposited checks, withdrew the funds and then refused to repay the amounts credited and withdrawn.

172.    The refusal to repay the amounts improperly credited and withdrawn constitutes a breach of the Remote Deposit Agreement.

173.    Raven's remote depositing of checks for other Defendants also constitutes a breach of the Remote Deposit Agreement.

174.    Defendants' breach of the Remote Deposit Agreement has damaged Evolve in the amount of $507,081.87.

175.    Evolve prays for an award of compensatory damages in the amounts of the eleven checks set forth herein and improperly credited to each account as well as an award of fees and costs pursuant to the Remote Deposit Agreement as well as Ark. Code Ann. § 16-22-308.

### CAUSE NO. 8 – BREACH OF THE LOAN AGREEMENTS/PROMISSORY NOTES

176.    Evolve incorporates and restates as if fully set forth herein the allegations of the preceding paragraphs of this Complaint.

177.    The loans, mortgages and promissory notes between Bove and Evolve constitute valid and enforceable contracts.

178.    Pursuant to the promissory notes, Evolve has the right to call the notes to be paid in full at any point in time.

179.    On August 21, 2020, Evolve provided written demand to Bove to repay the loans in full.

180.    Bove has not repaid loan **6291 and is now in breach.

181.    Evolve has been damaged by this breach in an amount to be determined that is as of April 14, 2021 $333,603.80.

23

182.    Evolve prays for an award of compensatory damages in the amount of any deficiency on

the loans (after a commercially reasonable sale) as well as an award of fees and costs

pursuant to Ark. Code Ann. § 16-22-308.

### CAUSE NO. 9 – CIVIL CONSPIRACY

183.    Evolve incorporates and restates as if fully set forth herein the allegations of the

preceding paragraphs of this Complaint.

184.    Bove is associated with all of the Arkansas limited liability company Defendants.

185.    They share the same address and facility in Cross County.

186.    As evidenced by Raven using its Remote Deposit Agreement to deposit checks written to

other entities, Defendants operate as an interchangeable operation and a shell game to move

money around as convenient.

187.    Following his divorce and upon information after a poor crop year, Bove faced financial

pressure and to prop up the appearance that he was still doing well financially utilized and

coordinated the Defendants in a scheme to funnel money to Bove beginning in the fall of

2019 and continuing through the summer of 2020.

188.    The steps taken in furtherance of the conspiracy include Raven using its remote deposit

capabilities to fraudulently deposit checks, Bove providing a fraudulent personal financial

statement, the Defendants negotiating, transferring or depositing checks that they knew were

joint payor checks with the joint payor's indorsement and the Defendants withdrawing funds

from their accounts that they knew they had no claim to those funds.  Bove furthered the

conspiracy by receiving the fraudulently obtained funds and converting that illicit cash into

real properties through loans from Evolve.

189.   The Arkansas limited liability company Defendants are separate legal entities and are all parties to a civil conspiracy to defraud Evolve.

190.   As parties to a civil conspiracy, the Defendants should be held jointly and severally liable for the damages caused by the entire organization.

## PRAYER FOR RELIEF

Having fully set forth its complaint in this case, Evolve prays for the relief sought in connection with each cause of action set forth above.

Evolve prays the process be issued and each Defendant be forced to answer for their conduct.

Evolve prays that the issues, claims and causes of action be tried to a jury.

Evolve prays for all such other and further relief to which it may be entitled as a matter of law or equity including but not limited to compensatory damages, treble damages pursuant to the RICO claims, punitive damages under the Arkansas state claims, an award of reasonable attorneys' fees, allowable costs and interest.

### BUTLER SNOW, LLP

By: DANIEL W. VAN HORN (AR - 2007024)
JAMES E. BAILEY, III  (AR – 94089)
ANDREW B. SCHRACK (AR – 2020035)

6075 Poplar Ave., Ste. 500
Memphis, TN 38119
(901) 680-7200
(901) 680-7201 (fax)
Danny.VanHorn@butlersnow.com
Jeb.Bailey@butlersnow.com
Andrew.Schrack@butlersnow.com

Attorneys for Evolve Bank & Trust

## **CERTIFICATE OF SERVICE**

The undersigned counsel hereby certifies that a true and correct copy of the foregoing has been served via the Court's electronic filing system, this the 14th day of April 2021.

s/ Daniel W. Van Horn

56520669.v1

Exhibit 1

# Account Agreement

Date: 04/18/16

**Institution Name & Address**

EVOLVE BANK & TRUST
#007 WYNNE
PO BOX 1003
WYNNE, AR 72396
(870) 238-5557

Revised Date: 08/13/19
CHANGE T CICERO TO T ADAMS

**Internal Use eBusiness**

**Account Title & Address**

DELTA BAY AGRI, LLC
2784 HIGHWAY 163
CHERRY VALLEY AR 72324

Enter Non-Individual Owner Information on page 2. There is additional Owner/Signer information space on page 2.

☐ If checked, this is a temporary account agreement.

Number of signatures required for withdrawal: 1

## Owner/Signer Information 1

| | |
|---|---|
| Name | HECTOR E BOVE |
| Relationship | |
| Address | 2784 HWY 163 CHERRY VALLEY AR 72324 |
| Mailing Address (if different) | |
| Gov't Issued Photo ID (type, number, state, issue date, exp. date) | Drivers License    DL |
| Other ID (description, details) | |
| Employer | RAVEN AGRICULTURE |
| Previous Financial Inst. | |
| E-Mail | hbove@raven agri.com |
| Work Phone | (870) 318-7295 |
| Home Phone: (870) 318-7295 | Mobile Phone (870) 318-7295 |
| Birth Date: | SSN/TIN: |

## Ownership of Account

The specified ownership will remain the same for all accounts.
☐ Individual
☐ Joint with Survivorship (not as tenants in common)
☐ Joint with No Survivorship (as tenants in common)

☐ Sole Proprietorship or Single Member LLC    ☐ Partnership
☒ LLC-enter tax classification ( ☐ C Corp  ☐ S Corp  ☐ Partnership)
☐ C Corporation   ☐ S Corporation  ☐
☐ Trust-Separate Agreement Dated:
☐

## Beneficiary Designation

(Check appropriate ownership above.)
☐ Pay-On-Death (POD)
☐

## Beneficiary Name(s), Address(es), and SSN(s)

(Check appropriate beneficiary designation above.)

## Signature(s)

The undersigned authorize the financial institution to investigate credit and employment history and obtain reports from consumer reporting agencies on them as individuals. Except as otherwise provided by law or other documents, each of the undersigned is authorized to make withdrawals from the account(s), provided the required number of signatures indicated above is satisfied. The undersigned personally and as, or on behalf of, the account owner(s) agree to the terms of, and acknowledge receipt of copy(ies) of, this document and the following:

☒ Terms & Conditions  ☐ Truth in Savings  ☒ Funds Availability
☐ Electronic Fund Transfers  ☒ Privacy  ☒ Substitute Checks
☒ Common Features  ☒ Specific Account Details

☐ Agency Designation (See Owner/Signer Information for Agency Designation(s).)

Agency Designation (select and initial): ☐ Survives OR
☐ Terminates on disability or incapacity of parties.

The Internal Revenue Service does not require your consent to any provision of this document other than the certifications required to avoid backup withholding.

(1): X _____
HECTOR E BOVE
I.D. # _____ D.O.B. _____

(2): X _____
ENRIQUE NICOLAS HUGHES
I.D. # _____ D.O.B. _____

(3): X  Taylor Adams
TAYLOR B ADAMS
I.D. # _____ D.O.B. _____

(4): X _____
I.D. # _____ D.O.B. _____

## Owner/Signer Information 2

| Field | Value |
|---|---|
| Name | ENRIQUE NICOLAS HUGHES |
| Relationship | |
| Address | 2784 HWY 163<br>CHERRY VALLEY AR 72324 |
| Mailing Address (if different) | |
| Gov't Issued Photo ID (type, number, state, issue date, exp. date) | Drivers License                          DL |
| Other ID (description, details) | |
| Employer | RAVEN AG |
| Previous Financial Inst. | |
| E-Mail | enriquehughes@hotmail.com |
| Work Phone | (870) 318-1873 |
| Home Phone: (870) 318-1873 | Mobile Phone: |
| Birth Date: | SSN/TIN: |

## Owner/Signer Information 3

| Field | Value |
|---|---|
| Name | TAYLOR B ADAMS |
| Relationship | |
| Address | 2822 HWY 163<br>CHERRY VALLEY AR 72324 |
| Mailing Address (if different) | |
| Gov't Issued Photo ID (type, number, state, issue date, exp. date) | Drivers License                          DL |
| Other ID (description, details) | |
| Employer | RAVEN AGRI |
| Previous Financial Inst. | |
| E-Mail | taylor.ciceraro@gmail.com |
| Work Phone | |
| Home Phone: | Mobile Phone:   (870) 919-5240 |
| Birth Date: | SSN/TIN: |

## Owner/Signer Information 4

| Field | Value |
|---|---|
| Name | |
| Relationship | |
| Address | |
| Mailing Address (if different) | |
| Gov't Issued Photo ID (type, number, state, issue date, exp. date) | |
| Other ID (description, details) | |
| Employer | |
| Previous Financial Inst. | |
| E-Mail | |
| Work Phone | |
| Home Phone: | Mobile Phone: |
| Birth Date: | SSN/TIN: |

**Important Account Opening Information.** Federal law requires us to obtain sufficient information to verify your identity. You may be asked several questions and to provide one or more forms of identification to fulfill this requirement. In some instances we may use outside sources to confirm the information. The information you provide is protected by our privacy policy and federal law.

## Non-Individual Owner Information

| Field | Value |
|---|---|
| Name | DELTA BAY AGRI, LLC |
| State/Country & Date of Organization | |
| Nature of Business | |
| Address | 2784 HIGHWAY 163<br>CHERRY VALLEY AR 72324 |
| Mailing Address (if different) | |
| Authorization/ Resolution Date | |
| Previous Financial Inst. | |
| E-Mail | |
| Phone | (870) 318-7295 |
| EIN: | Mobile Phone: |

| Account Description | Account # | Initial Deposit/Source | | |
|---|---|---|---|---|
| Checking | 1012700082 | $ .00 | ☐ Cash | ☐ Check |
| | | $ | ☐ Cash | ☐ Check |
| | | $ | ☐ Cash | ☐ Check |

### Services Requested

☐ ATM   ☐ Debit/Check Cards (No. Requested: _____ )
☐ _____   ☐ _____
☐ _____   ☐ _____

### Backup Withholding Certifications

(If not a "U.S. Person", certify foreign status separately)

☒ By signing signature field (1) on this document, I certify under penalties of perjury that the statements made in this section are true and that I am a U.S. citizen or other U.S. person (as defined in the instructions).

☒ Taxpayer I.D. Number - TIN: _____
The Taxpayer Identification Number (TIN) shown is my correct taxpayer identification number.

☒ Backup Withholding. I am not subject to backup withholding either because I have not been notified that I am subject to backup withholding as a result of a failure to report all interest or dividends, or the Internal Revenue Service has notified me that I am no longer subject to backup withholding.

☐ Exempt Recipients. I am an exempt recipient under the Internal Revenue Service Regulations. Exempt payee code (if any) _____

FATCA Code. The FATCA code entered on this form (if any) indicating that I am exempt from FATCA reporting is correct.

### Other Terms/Information

Cash Management services are subject to approval and may require additional agreements.

Exhibit 2

# Account Agreement

Date: 11/28/16

**Institution Name & Address**

EVOLVE BANK & TRUST
#007 WYNNE
PO BOX 1003
WYNNE, AR 72396
(870) 238-5557

Revised Date: 08/13/19
CHANGE T CICERO TO T ADAMS

**Owner/Signer Information 1**

| | |
|---|---|
| Name | HECTOR E BOVE |
| Relationship | |
| Address | 2784 HWY 163<br>CHERRY VALLEY AR 72324 |
| Mailing Address (if different) | |
| Gov't Issued Photo ID (type, number, state, issue date, exp. date) | Drivers License                    DL |
| Other ID (description, details) | |
| Employer | RAVEN AGRICULTURE |
| Previous Financial Inst. | |
| E-Mail | hbove@raven agri.com |
| Work Phone | (870) 318-7295 |
| Home Phone | (870) 318-7295 | Mobile Phone: (870) 318-7295 |
| Birth Date: | SSN/TIN: |

**Ownership of Account**

The specified ownership will remain the same for all accounts.
☐ Individual
☐ Joint with Survivorship (not as tenants in common)
☐ Joint with No Survivorship (as tenants in common)

☐ Sole Proprietorship or Single Member LLC    ☐ Partnership
☒ LLC-enter tax classification ( ☐ C Corp ☐ S Corp ☐ Partnership)
☐ C Corporation  ☐ S Corporation  ☐ _____
☐ Trust-Separate Agreement Dated: _____

**Beneficiary Designation**

*(Check appropriate ownership above.)*
☐ Pay-On-Death (POD)
☐

**Beneficiary Name(s), Address(es), and SSN(s)**

*(Check appropriate beneficiary designation above.)*

---

Internal Use eBusiness

**Account Title & Address**

RAVEN AGRICULTURE LLC
PAYROLL ACCOUNT
2784 HWY 163
CHERRY VALLEY AR 72324

Enter Non-Individual Owner information on page 2. There is additional Owner/Signer information space on page 2.

☐ If checked, this is a temporary account agreement.

Number of signatures required for withdrawal: __1__.

**Signature(s)**

The undersigned authorize the financial institution to investigate credit and employment history and obtain reports from consumer reporting agency(ies) on them as individuals. Except as otherwise provided by law or other documents, each of the undersigned is authorized to make withdrawals from the account(s), provided the required number of signatures indicated above is satisfied. The undersigned personally and as, or on behalf of, the account owner(s) agree to the terms of, and acknowledge receipt of copy(ies) of, this document and the following:

☒ Terms & Conditions    ☐ Truth In Savings    ☒ Funds Availability
☐ Electronic Fund Transfers    ☒ Privacy    ☒ Substitute Checks
☒ Common Features    ☒ Specific Account Details

☐ Agency Designation (See Owner/Signer Information for Agency Designation(s).)

Agency Designation *(select and initial)*: ☐ Survives OR
☐ Terminates on disability or incapacity of parties.

The Internal Revenue Service does not require your consent to any provision of this document other than the certifications required to avoid backup withholding.

(1): X _____
HECTOR E BOVE
I.D. # _____    D.O.B. _____

(2): X _____
ENRIQUE NICOLAS HUGHES
I.D. # _____    D.O.B. _____

(3): X *Taylor Adams*
TAYLOR B ADAMS
I.D. # _____    D.O.B. _____

(4): X _____
I.D. # _____    D.O.B. _____

---

## Owner/Signer Information 2

| | |
|---|---|
| Name | ENRIQUE NICOLAS HUGHES |
| Relationship | |
| Address | 2784 HWY 163 CHERRY VALLEY AR 72324 |
| Mailing Address (if different) | |
| Gov't Issued Photo ID (type, number, state, issue date, exp. date) | Drivers License          DL |
| Other ID (description, details) | |
| Employer | RAVEN AG |
| Previous Financial Inst. | |
| E-Mail | enriquehughes@hotmail.com |
| Work Phone | (870) 318-1873 |
| Home Phone: (870) 318-1873 | Mobile Phone: |
| Birth Date: | SSN/TIN: |

## Owner/Signer Information 3

| | |
|---|---|
| Name | TAYLOR B ADAMS |
| Relationship | |
| Address | 2822 HWY 163 CHERRY VALLEY AR 72324 |
| Mailing Address (if different) | |
| Gov't Issued Photo ID (type, number, state, issue date, exp. date) | Drivers License          DL |
| Other ID (description, details) | |
| Employer | RAVEN AGRI |
| Previous Financial Inst. | |
| E-Mail | taylor.ciceraro@gmail.com |
| Work Phone | |
| Home Phone: | Mobile Phone: (870) 919-5240 |
| Birth Date: | SSN/TIN: |

## Owner/Signer Information 4

| | |
|---|---|
| Name | |
| Relationship | |
| Address | |
| Mailing Address (if different) | |
| Gov't Issued Photo ID (type, number, state, issue date, exp. date) | |
| Other ID (description, details) | |
| Employer | |
| Previous Financial Inst. | |
| E-Mail | |
| Work Phone | |
| Home Phone: | Mobile Phone: |
| Birth Date: | SSN/TIN: |

**Important Account Opening Information.** Federal law requires us to obtain sufficient information to verify your identity. You may be asked several questions and to provide one or more forms of identification to fulfill this requirement. In some instances we may use outside sources to confirm the information. The information you provide is protected by our privacy policy and federal law.

Signature Card-AR
Bankers Systems™ VMP®
Wolters Kluwer Financial Services © 2016

## Non-Individual Owner Information

| | |
|---|---|
| Name | RAVEN AGRICULTURE LLC |
| State/Country & Date of Organization | |
| Nature of Business | |
| Address | 2784 HWY 163 CHERRY VALLEY AR 72324 |
| Mailing Address (if different) | |
| Authorization/ Resolution Date | |
| Previous Financial Inst. | |
| E-Mail | hbove@ravenagri.com |
| Phone | (870) 318-7295 |
| EIN: | Mobile Phone: (870) 318-7295 |

| Account Description | Account # | Initial Deposit/Source |
|---|---|---|
| Checking | | $ .00  ☐ Cash  ☐ Check |
| | | $  ☐ Cash  ☐ Check |
| | | $  ☐ Cash  ☐ Check |

### Services Requested

☐ ATM          ☐ Debit/Check Cards (No. Requested: _____ )
☐ _____          ☐ _____
☐ _____          ☐ _____

### Backup Withholding Certifications

(If not a "U.S. Person", certify foreign status separately)

☒ By signing signature field (1) on this document, I certify under penalties of perjury that the statements made in this section are true and that I am a U.S. citizen or other U.S. person (as defined in the instructions).

☒ Taxpayer I.D. Number - TIN: _____
The Taxpayer Identification Number (TIN) shown is my correct taxpayer identification number.

☒ Backup Withholding. I am not subject to backup withholding either because I have not been notified that I am subject to backup withholding as a result of a failure to report all interest or dividends, or the Internal Revenue Service has notified me that I am no longer subject to backup withholding.

☐ Exempt Recipients. I am an exempt recipient under the Internal Revenue Service Regulations. Exempt payee code (if any) _____

FATCA Code. The FATCA code entered on this form (if any) indicating that I am exempt from FATCA reporting is correct.

### Other Terms/Information

Cash Management Services are subject to approval and may require additional agreements.

Exhibit 3

# Account Agreement

Date: 02/28/17

**Institution Name & Address**

EVOLVE BANK & TRUST
#007 WYNNE
PO BOX 1003
WYNNE, AR 72396
(870) 238-5557

Revised Date: 08/13/19
CHANGE T CICERO T ADAMS

**Internal Use** eBusiness

**Account Title & Address**

TOGO FARMING LLC
2784 HWY 163
CHERRY VALLEY AR 72324

Enter Non-Individual Owner Information on page 2. There is additional Owner/Signer Information space on page 2.

☐ If checked, this is a temporary account agreement.
Number of signatures required for withdrawal: __1__ .

## Owner/Signer  Information 1

| | |
|---|---|
| Name | HECTOR E BOVE |
| Relationship | |
| Address | 2784 HWY 163 CHERRY VALLEY AR 72324 |
| Mailing Address (if different) | |
| Gov't issued Photo ID (type, number, state, issue date, exp. date) | Drivers License                     DL |
| Other ID (description, details) | |
| Employer | RAVEN AGRICULTURE |
| Previous Financial Inst. | |
| E-Mail | hbove@raven agri.com |
| Work Phone | (870) 318-7295 |
| Home Phone | (870) 318-7295    Mobile Phone: (870) 318-7295 |
| Birth Date: | SSN/TIN: |

## Ownership of Account

The specified ownership will remain the same for all accounts.
☐ Individual
☐ Joint with Survivorship (not as tenants in common)
☐ Joint with No Survivorship (as tenants in common)

☐ Sole Proprietorship or Single Member LLC     ☐ Partnership
☒ LLC-enter tax classification ( ☐ C Corp  ☐ S Corp  ☐ Partnership)
☐ C Corporation  ☐ S Corporation  ☐ _____
☐ Trust-Separate Agreement Dated: _____
☐

## Beneficiary Designation

(Check appropriate ownership above.)
☐ Pay-On-Death (POD)
☐

## Beneficiary Name(s), Address(es), and SSN(s)

(Check appropriate beneficiary designation above.)

## Signature(s)

The undersigned authorize the financial institution to investigate credit and employment history and obtain reports from consumer reporting agency(ies) on them as individuals. Except as otherwise provided by law or other documents, each of the undersigned is authorized to make withdrawals from the account(s), provided the required number of signatures indicated above is satisfied. The undersigned personally and as, or on behalf of, the account owner(s) agree to the terms of, and acknowledge receipt of copy(ies) of, this document and the following:

☒ Terms & Conditions   ☐ Truth in Savings     ☒ Funds Availability
☐ Electronic Fund Transfers   ☒ Privacy     ☒ Substitute Checks
☒ Common Features   ☒ Specific Account Details

☐ Agency Designation (See Owner/Signer Information for Agency Designation(s).)
Agency Designation (select and initial): ☐ Survives OR
☐ Terminates on disability or incapacity of parties.

The Internal Revenue Service does not require your consent to any provision of this document other than the certifications required to avoid backup withholding.

(1): ☒ _____

HECTOR E BOVE

I.D. # _____     D.O.B. _____

(2): ☒ _____

ENRIQUE NICOLAS HUGHES

I.D. # _____     D.O.B. _____

(3): ☒ _Taylor Adams_

TAYLOR B ADAMS

I.D. # _____     D.O.B. _____

(4): ☒ _____

I.D. # _____     D.O.B. _____

## Owner/Signer Information 2

| Field | Value |
|---|---|
| Name | ENRIQUE NICOLAS HUGHES |
| Relationship | |
| Address | 2784 HWY 163 CHERRY VALLEY AR 72324 |
| Mailing Address (if different) | |
| Gov't Issued Photo ID (type, number, state, issue date, exp. date) | Drivers License          DL |
| Other ID (description, details) | |
| Employer | RAVEN AG |
| Previous Financial Inst. | |
| E-Mail | enriquehughes@hotmail.com |
| Work Phone | (870) 318-1873 |
| Home Phone: (870) 318-1873 | Mobile Phone: |
| Birth Date: | SSN/TIN: |

## Owner/Signer Information 3

| Field | Value |
|---|---|
| Name | TAYLOR B ADAMS |
| Relationship | |
| Address | 2822 HWY 163 CHERRY VALLEY AR 72324 |
| Mailing Address (if different) | |
| Gov't Issued Photo ID (type, number, state, issue date, exp. date) | Drivers License          DL |
| Other ID (description, details) | |
| Employer | RAVEN AGRI |
| Previous Financial Inst. | |
| E-Mail | taylor.ciceraro@gmail.com |
| Work Phone | |
| Home Phone: | Mobile Phone: (870) 919-5240 |
| Birth Date: | SSN/TIN: |

## Owner/Signer Information 4

| Field | Value |
|---|---|
| Name | |
| Relationship | |
| Address | |
| Mailing Address (if different) | |
| Gov't Issued Photo ID (type, number, state, issue date, exp. date) | |
| Other ID (description, details) | |
| Employer | |
| Previous Financial Inst. | |
| E-Mail | |
| Work Phone | |
| Home Phone: | Mobile Phone: |
| Birth Date: | SSN/TIN: |

**Important Account Opening Information.** Federal law requires us to obtain sufficient information to verify your identity. You may be asked several questions and to provide one or more forms of identification to fulfill this requirement. In some instances we may use outside sources to confirm the information. The information you provide is protected by our privacy policy and federal law.

## Non-Individual Owner Information

| Field | Value |
|---|---|
| Name | TOGO FARMING LLC |
| State/Country & Date of Organization | |
| Nature of Business | |
| Address | 2784 HWY 163 CHERRY VALLEY AR 72324 |
| Mailing Address (if different) | |
| Authorization/ Resolution Date | |
| Previous Financial Inst. | |
| E-Mail | |
| Phone | (870) 318-7295 |
| EIN: | Mobile Phone: |

| Account Description | Account # | Initial Deposit/Source |
|---|---|---|
| Checking | | $ .00  ☐ Cash  ☐ Check |
| | | $  ☐ Cash  ☐ Check |
| | | $  ☐ Cash  ☐ Check |

### Services Requested

☐ ATM    ☐ Debit/Check Cards (No. Requested: _____)
☐ _____    ☐ _____

### Backup Withholding Certifications

(If not a "U.S. Person", certify foreign status separately)

☒ By signing signature field (1) on this document, I certify under penalties of perjury that the statements made in this section are true and that I am a U.S. citizen or other U.S. person (as defined in the instructions).

☒ Taxpayer I.D. Number – TIN: _____
The Taxpayer Identification Number (TIN) shown is my correct taxpayer identification number.

☒ Backup Withholding. I am not subject to backup withholding either because I have not been notified that I am subject to backup withholding as a result of a failure to report all interest or dividends, or the Internal Revenue Service has notified me that I am no longer subject to backup withholding.

☐ Exempt Recipients. I am an exempt recipient under the Internal Revenue Service Regulations. Exempt payee code (if any) _____

FATCA Code. The FATCA code entered on this form (if any) indicating that I am exempt from FATCA reporting is correct.

### Other Terms/Information

Cash Management Services are subject to approval and may require additional agreements.

Exhibit 4

# Account Agreement

Date: 11/08/18

**Institution Name & Address**

EVOLVE BANK & TRUST
#007 WYNNE
PO BOX 1003
WYNNE, AR 72396
(870) 238-8957

**Internal Use eLife**

**Account Title & Address**

HECTOR E BOVE
2784 HWY 163
CHERRY VALLEY AR 72324

Enter Non-Individual Owner Information on page 2. There is additional Owner/Signer Information space on page 2.

☐ If checked, this is a temporary account agreement.

Number of signatures required for withdrawal: 1

**Owner/Signer Information 1**

| | |
|---|---|
| Name | HECTOR E BOVE |
| Relationship | |
| Address | 2784 HWY 163 CHERRY VALLEY AR 72324 |
| Mailing Address (if different) | |
| Gov't Issued Photo ID (type, number, state, issue date, exp. date) | Drivers License          DL |
| Other ID (description, details) | |
| Employer | RAVEN AGRICULTURE |
| Previous Financial Inst. | |
| E-Mail | hbove@raven agri.com |
| Work Phone | (870) 318-7295 |
| Home Phone | (870) 318-7295 | Mobile Phone | (870) 318-7295 |
| Birth Date | | SSN/TIN | |

**Signature(s)**

The undersigned authorize the financial institution to investigate credit and employment history and obtain reports from consumer reporting agency(ies) on them as individuals. Except as otherwise provided by law or other documents, each of the undersigned is authorized to make withdrawals from the account(s), provided the required number of signatures indicated above is satisfied. The undersigned personally and as, or on behalf of, the account owner(s) agree to the terms of, and acknowledge receipt of copy(ies) of, this document and the following:

| | | | |
|---|---|---|---|
| ☒ Terms & Conditions | ☒ Truth in Savings | ☒ Funds Availability |
| ☒ Electronic Fund Transfers | ☒ Privacy | ☒ Substitute Checks |
| ☒ Common Features | ☐ _____ | |

☐ Agency Designation (See Owner/Signer Information for Agency Designation(s).)

Agency Designation (select and initial): ☐ Survives OR

☐ Terminates on disability or incapacity of parties.

The Internal Revenue Service does not require your consent to any provision of this document other than the certifications required to avoid backup withholding.

**Ownership of Account**

The specified ownership will remain the same for all accounts.

☒ Individual

☐ Joint with Survivorship (not as tenants in common)

☐ Joint with No Survivorship (as tenants in common)

☐ Sole Proprietorship or Single Member LLC          ☐ Partnership

☐ LLC-enter tax classification ( ☐ C Corp  ☐ S Corp  ☐ Partnership)

☐ C Corporation   ☐ S Corporation   _____

☐ Trust-Separate Agreement Dated: _____

**Beneficiary Designation**

(Check appropriate ownership above.)

☐ Pay-On-Death (POD)

☐ _____

**Beneficiary Name(s), Address(es), and SSN(s)**

(Check appropriate beneficiary designation above.)

(1): X _____

HECTOR E BOVE

I.D. # _____          D.O.B. _____

(2): X [                              ]

I.D. # _____          D.O.B. _____

(3): X [                              ]

I.D. # _____          D.O.B. _____

(4): X [                              ]

I.D. # _____          D.O.B. _____

## Owner/Signer Information 2

| | |
|---|---|
| Name | |
| Relationship | |
| Address | |
| Mailing Address (if different) | |
| Gov't Issued Photo ID (type, number, state, issue date, exp. date) | |
| Other ID (description, details) | |
| Employer | |
| Previous Financial Inst. | |
| E-Mail | |
| Work Phone | |
| Home Phone: | Mobile Phone: |
| Birth Date: | SSN/TIN: |

## Owner/Signer Information 3

| | |
|---|---|
| Name | |
| Relationship | |
| Address | |
| Mailing Address (if different) | |
| Gov't Issued Photo ID (type, number, state, issue date, exp. date) | |
| Other ID (description, details) | |
| Employer | |
| Previous Financial Inst. | |
| E-Mail | |
| Work Phone | |
| Home Phone: | Mobile Phone: |
| Birth Date: | SSN/TIN: |

## Owner/Signer Information 4

| | |
|---|---|
| Name | |
| Relationship | |
| Address | |
| Mailing Address (if different) | |
| Gov't Issued Photo ID (type, number, state, issue date, exp. date) | |
| Other ID (description, details) | |
| Employer | |
| Previous Financial Inst. | |
| E-Mail | |
| Work Phone | |
| Home Phone: | Mobile Phone: |
| Birth Date: | SSN/TIN: |

**Important Account Opening Information.** Federal law requires us to obtain sufficient information to verify your identity. You may be asked several questions and to provide one or more forms of identification to fulfill this requirement. In some instances we may use outside sources to confirm the information. The information you provide is protected by our privacy policy and federal law.

## Non-Individual Owner Information

| | |
|---|---|
| Name | |
| State/Country & Date of Organization | |
| Nature of Business | |
| Address | |
| Mailing Address (if different) | |
| Authorization/ Resolution Date | |
| Previous Financial Inst. | |
| E-Mail | |
| Phone | |
| EIN: | Mobile Phone: |

## Account Description

| Account Description | Account # | Initial Deposit Source |
|---|---|---|
| Now | | $ ☐ Cash  ☐ Check  ☐ |
| | | $ ☐ Cash  ☐ Check  ☐ |
| | | $ ☐ Cash  ☐ Check  ☐ |

## Services Requested

☐ ATM   ☐ Debit/Check Cards (No. Requested: ____ )

☐ _____   ☐ _____

☐ _____

## Backup Withholding Certifications

(If not a "U.S. Person", certify foreign status separately)

☒ By signing signature field (1) on this document, I certify under penalties of perjury that the statements made in this section are true and that I am a U.S. citizen or other U.S. person (as defined in the instructions).

☒ **Taxpayer I.D. Number - TIN:** _____
The Taxpayer Identification Number (TIN) shown is my correct taxpayer identification number.

☒ **Backup Withholding.** I am not subject to backup withholding either because I have not been notified that I am subject to backup withholding as a result of a failure to report all interest or dividends, or the Internal Revenue Service has notified me that I am no longer subject to backup withholding.

☐ **Exempt Recipients.** I am an exempt recipient under the Internal Revenue Service Regulations. Exempt payee code (if any) _____

**FATCA Code.** The FATCA code entered on this form (if any) indicating that I am exempt from FATCA reporting is correct.

## Other Terms/Information

Signature Card-AR
Bankers Systems ™ VMP®
Wolters Kluwer Financial Services © 2015

MPMP-LAZ-AR  3/18/2015
Page 2 of 2

Exhibit 5

# Terms and Conditions of Your Account

**Agreement.** This document, along with any other documents we give you pertaining to your account(s), is a contract that establishes rules which control your account(s) with us. Please read this carefully and retain it for future reference. If you sign the signature card or open or continue to use the account, you agree to these rules. You will receive a separate schedule of rates, qualifying balances, and fees if they are not included in this document. If you have any questions, please call us.

This agreement is subject to applicable federal laws, the laws of the state of Arkansas and other applicable rules such as the operating letters of the Federal Reserve Banks and payment processing system rules (except to the extent that this agreement can and does vary such rules or laws). The body of state and federal law that governs our relationship with you, however, is too large and complex to be reproduced here. The purpose of this document is to:

1. summarize some laws that apply to common transactions;
2. establish rules to cover transactions or events which the law does not regulate;
3. establish rules for certain transactions or events which the law regulates but permits variation by agreement; and
4. give you disclosures of some of our policies to which you may be entitled or in which you may be interested.

If any provision of this document is found to be unenforceable according to its terms, all remaining provisions will continue in full force and effect. We may permit some variations from our standard agreement, but we must agree to any variation in writing either on the signature card for your account or in some other document.

As used in this document the words "we," "our," and "us" mean the financial institution and the words "you" and "your" mean the account holder(s) and anyone else with the authority to deposit, withdraw, or exercise control over the funds in the account. However, this agreement does not intend, and the terms "you" and "your" should not be interpreted, to expand an individual's responsibility for an organization's liability. If this account is owned by a corporation, partnership or other organization, individual liability is determined by the laws generally applicable to that type of organization. The headings in this document are for convenience or reference only and will not govern the interpretation of the provisions. Unless it would be inconsistent to do so, words and phrases used in this document should be construed so the singular includes the plural and the plural includes the singular.

**Liability.** You agree, for yourself (and the person or entity you represent if you sign as a representative of another) to the terms of this account and the schedule of charges. You authorize us to deduct these charges, without notice to you, directly from the account balance as accrued. You will pay any additional reasonable charges for services you request which are not covered by this agreement.

Each of you also agrees to be jointly and severally (individually) liable for any account shortage resulting from charges or overdrafts, whether caused by you or another with access to this account. This liability is due immediately, and can be deducted directly from the account balance whenever sufficient funds are available. You have no right to defer payment of this liability, and you are liable regardless of whether you signed the item or benefited from the charge or overdraft.

You will be liable for our costs as well as for our reasonable attorneys' fees, to the extent permitted by law, whether incurred as a result of collection or in any other dispute involving your account. This includes, but is not limited to, disputes between you and another joint owner; you and an authorized signer or similar party; or a third party claiming an interest in your account. This also includes any action that you or a third party takes regarding the account that causes us, in good faith, to seek the advice of an attorney, whether or not we become involved in the dispute. All costs and attorneys' fees can be deducted from your account when they are incurred, without notice to you.

**Deposits.** We will give only provisional credit until collection is final for any items, other than cash, we accept for deposit (including items drawn "on us"). Before settlement of any item becomes final, we act only as your agent, regardless of the form of indorsement or lack of indorsement on the item and even though we provide you provisional credit for the item. We may reverse any provisional credit for items that are lost, stolen, or returned. Actual credit for deposits of, or payable in, foreign currency will be at the exchange rate in effect on final collection in U.S. dollars. We are not responsible for transactions by mail or outside depository until we actually record them. We will treat and record all transactions received after our "daily cutoff time" on a business day we are open, or received on a day we are not open for business, as if initiated on the next business day that we are open. At our option, we may take an item for collection rather than for deposit. If we accept a third-party check for deposit, we may require any third-party indorsers to verify or guarantee their indorsements, or indorse in our presence.

**Withdrawals.**

**Generally.** Unless clearly indicated otherwise on the account records, any of you, acting alone, who signs to open the account or has authority to make withdrawals may withdraw or transfer all or any part of the account balance at any time. Each of you (until we receive written notice to the contrary) authorizes each other person who signs or has authority to make withdrawals to indorse any item payable to you or your order for deposit to this account or any other transaction with us.

**Postdated Checks.** A postdated check is one which bears a date later than the date on which the check is written. We may properly pay and charge your account for a postdated check even though payment was made before the date of the check, unless we have received written notice of the postdating in time to have a reasonable opportunity to act. Because we process checks mechanically, your notice will not be effective and we will not be liable for failing to honor your notice unless it precisely identifies the number, date, amount and payee of the item.

**Checks and Withdrawal Rules.** If you do not purchase your check blanks from us, you must be certain that we approve the check blanks you purchase. We may refuse any withdrawal or transfer request which you attempt on forms not approved by us or by any method we do not specifically permit. We may refuse any withdrawal or transfer request which is greater in number than the frequency permitted, or which is for an amount greater or less than any withdrawal limitations. We will use the date the transaction is completed by us (as opposed to the date you initiate it) to apply the frequency limitations. In addition, we may place limitations on the account until your identity is verified.

Even if we honor a nonconforming request, we are not required to do so later. If you violate the stated transaction limitations (if any), in our discretion we may close your account or reclassify it as a transaction account. If we reclassify your account, your account will be subject to the fees and earnings rules of the new account classification.

If we are presented with an item drawn against your account that would be a "substitute check," as defined by law, but for an error or defect in the item introduced in the substitute check creation process, you agree that we may pay such item.

See the funds availability policy disclosure for information about when you can withdraw funds you deposit. For those accounts to which our funds availability policy disclosure does not apply, you can ask us when you make a deposit when those funds will be available for withdrawal. We may determine the amount of available funds in your account for the purpose of deciding whether to return an item for insufficient funds at any time between the time we receive the item and when we return the item or send a notice in lieu of return. We need only make one determination, but if we choose to make a subsequent determination, the account balance at the subsequent time will determine whether there are insufficient available funds.

**Overdrafts.** You understand that we may, at our discretion, honor withdrawal requests that overdraw your account. However, the fact that we may honor withdrawal requests that overdraw the account balance does not obligate us to do so later. So you can NOT rely on us to pay overdrafts on your account regardless of how frequently or under what circumstances we have paid overdrafts on your account in the past. We can change our practice of paying overdrafts on your account without notice to you. You can ask us if we have other account services that might be available to you where we commit to paying overdrafts under certain circumstances, such as an overdraft protection line-of-credit or a plan to sweep funds from another account you have with us. You agree that we may charge fees for overdrafts. For consumer accounts, we will not charge fees for overdrafts caused by ATM withdrawals or one-time debit card transactions if you have not opted-in to that service. We may use subsequent deposits, including direct deposits of social security or other government benefits, to cover such overdrafts and overdraft fees.

**Multiple Signatures, Electronic Check Conversion, and Similar Transactions.** An electronic check conversion transaction is a transaction where a check or similar item is converted into an electronic fund transfer as defined in the Electronic Fund Transfers regulation. In these types of transactions the check or similar item is either removed from circulation (truncated) or given back to you. As a result, we have no opportunity to review the check to examine the signatures on the item. You agree that, as to these or any items as to which we have no opportunity to examine the signatures, you waive any requirement of multiple signatures.

**Notice of Withdrawal.** We reserve the right to require not less than 7 days' notice in writing before each withdrawal from an interest-bearing account other than a time deposit, or from any other savings account as defined by Regulation D. (The law requires us to reserve this right, but it is not our general policy to use it.) Withdrawals from a time account prior to maturity or prior to any notice period may be restricted and may be subject to penalty. See your notice of penalty for early withdrawal.

**Ownership of Account and Beneficiary Designation.** These rules apply to this account depending on the form of ownership and beneficiary designation, if any, specified on the account records. We make no representations as to the appropriateness or effect of the ownership and beneficiary designations, except as they determine to whom we pay the account funds.

**Individual Account.** This is an account in the name of one person.

**Joint Account - With Survivorship** *(And Not As Tenants In Common)*. This is an account in the name of two or more persons. Each of you intend that when you die the balance in the account (subject to any previous pledge to which we have agreed) will belong to the survivor(s). If two or more of you survive, you will own the balance in the account as joint tenants with survivorship and not as tenants in common.

**Joint Account - No Survivorship** *(As Tenants In Common)*. This is owned by two or more persons, but none of you intend (merely by opening this account) to create any right of survivorship in any other person. We encourage you to agree and tell us in writing the percentage of the deposit contributed by each of you. This information will not, however, affect the "number of signatures" necessary for withdrawal.

**Pay-On-Death Account.** If two or more of you create such an account, you own the account jointly with survivorship. Beneficiaries cannot withdraw unless: (1) all persons creating the account die, and (2) the beneficiary is then living. If two or more beneficiaries are named and survive the death of all persons creating the account, such beneficiaries will own this account in equal shares, with right of survivorship. The person(s) creating this account type reserves the right to: (1) change beneficiaries, (2) change account types, and (3) withdraw all or part of the account funds at any time.

**Business, Organization and Association Accounts.** Earnings in the form of interest, dividends, or credits will be paid only on collected funds, unless otherwise provided by law or our policy. You represent that you have the authority to open and conduct business on this account on behalf of the entity. We may require the governing body of the entity opening the account to give us a separate authorization telling us who is authorized to act on its behalf. We will honor the authorization until we actually receive written notice of a change from the governing body of the entity.

**Stop Payments.** Unless otherwise provided, the rules in this section cover stopping payment of items such as checks and drafts. Rules for stopping payment of other types of transfers of funds, such as consumer electronic fund transfers, may be established by law or our policy. If we have not disclosed these rules to you elsewhere, you may ask us about those rules.

We may accept an order to stop payment on any item from any one of you. You must make any stop-payment order in the manner required by law and we must receive it in time to give us a reasonable opportunity to act on it before our stop-payment cutoff time. Because stop-payment orders are handled by computers, to be effective, your stop-payment order must precisely identify the number, date, and amount of the item, and the payee.

You may stop payment on any item drawn on your account whether you sign the item or not. Generally, if your stop-payment order is given to us in writing it is effective for six months. Your order will lapse after that time if you do not renew the order in writing before the end of the six-month period. If the original stop-payment order was verbal your stop-payment order will lapse after 14 calendar days if you do not confirm your order in writing within that time period. We are not obligated to notify you when a stop-payment order expires. A release of the stop-payment request may be made only by the person who initiated the stop-payment order.

If you stop payment on an item and we incur any damages or expenses because of the stop payment, you agree to indemnify us for those damages or expenses, including attorneys' fees. You assign to us all rights against the payee or any other holder of the item. You agree to cooperate with us in any legal actions that we may take against such persons. You should be aware that anyone holding the item may be entitled to enforce payment against you despite the stop-payment order.

Our stop-payment cutoff time is one hour after the opening of the next banking day after the banking day on which we receive the item. Additional limitations on our obligation to stop payment are provided by law (e.g., we paid the item in cash or we certified the item).

**Telephone Transfers.** A telephone transfer of funds from this account to another account with us, if otherwise arranged for or permitted, may be made by the same persons and under the same conditions generally applicable to withdrawals made in writing. Unless a different limitation is disclosed in writing, we restrict the number of transfers from a savings account to another account or to third parties, to a maximum of six per month (less the number of "preauthorized transfers" during the month). Other account transfer restrictions may be described elsewhere.

**Amendments and Termination.** We may change any term of this agreement. Rules governing changes in interest rates are provided separately in the Truth-in-Savings disclosure or in another document. For other changes, we will give you reasonable notice in writing or by any other method permitted by law. We may also close this account at any time upon reasonable notice to you and tender of the account balance personally or by mail. Items presented for payment after the account is closed may be dishonored. When you close your account, you are responsible for leaving enough money in the account to cover any outstanding items to be paid from the account. Reasonable notice depends on the circumstances, and in some cases such as when we cannot verify your identity or we suspect fraud, it might be reasonable for us to give you notice after the change or account closure becomes effective. For instance, if we suspect fraudulent activity with respect to your account, we might immediately freeze or close your account and then give you notice. You agree to keep us informed of your current address at all times. Notice from us to any one of you is notice to all of you. If we have notified you of a change in any term of your account and you continue to have your account after the effective date of the change, you have agreed to the new term(s).

**Statements.**

**Your Duty to Report Unauthorized Signatures, Alterations and Forgeries.** You must examine your statement of account with "reasonable promptness." If you discover (or reasonably should have discovered) any unauthorized signatures or alterations, you must

promptly notify us of the relevant facts. As between you and us, if you fail to do either of these duties, you will have to either share the loss with us, or bear the loss entirely yourself (depending on whether we used ordinary care and, if not, whether we substantially contributed to the loss). The loss could be not only with respect to items on the statement but other items with unauthorized signatures or alterations by the same wrongdoer.

You agree that the time you have to examine your statement and report to us will depend on the circumstances, but will not, in any circumstance, exceed a total of 30 days from when the statement is first sent or made available to you.

You further agree that if you fail to report any unauthorized signatures, alterations or forgeries in your account within 60 days of when we first send or make the statement available, you cannot assert a claim against us on any items in that statement, and as between you and us the loss will be entirely yours. This 60-day limitation is without regard to whether we used ordinary care. The limitation in this paragraph is in addition to that contained in the first paragraph of this section.

**Your Duty to Report Other Errors.** In addition to your duty to review your statements for unauthorized signatures, alterations and forgeries, you agree to examine your statement with reasonable promptness for any other error - such as an encoding error. You agree that the time you have to examine your statement and report to us will depend on the circumstances. However, such time period shall not exceed 60 days. Failure to examine your statement and report any such errors to us within 60 days of when we first send or make the statement available precludes you from asserting a claim against us for any such errors on items identified in that statement and as between you and us the loss will be entirely yours.

**Errors Relating to Electronic Fund Transfers or Substitute Checks** *(For consumer accounts only).* For information on errors relating to electronic fund transfers (e.g., computer, debit card or ATM transactions) refer to your Electronic Fund Transfers disclosure and the sections on consumer liability and error resolution. For information on errors relating to a substitute check you received, refer to your disclosure entitled Substitute Checks and Your Rights.

**Direct Deposits.** If we are required for any reason to reimburse the federal government for all or any portion of a benefit payment that was directly deposited into your account, you authorize us to deduct the amount of our liability to the U.S. Government from the account or from any other account you have with us, without prior notice and at any time, except as prohibited by law. We may also use any other legal remedy to recover the amount of our liability.

**Temporary Account Agreement.** If this option is selected, this is a temporary account agreement. Each person who signs to open the account or has authority to make withdrawals (except as indicated to the contrary) may transact business on this account. However, we may at some time in the future restrict or prohibit further use of this account if you fail to comply with the requirements we have imposed within a reasonable time.

**Set-Off.** We may (without prior notice and when permitted by law) set off the funds in this account against any due and payable debt you owe us now or in the future, by any of you having the right of withdrawal, to the extent of such persons' or legal entity's right to withdraw. If the debt arises from a note, "any due and payable debt" includes the total amount of which we are entitled to demand payment under the terms of the note at the time we set off, including any balance the due date for which we properly accelerate under the note.

This right of set-off does not apply to this account if prohibited by law. For example, the right of set-off does not apply to this account if: (a) it is an Individual Retirement Account or similar tax-deferred account, or (b) the debt is created by a consumer credit transaction under a credit card plan (but this does not affect our rights under any consensual security interest), or (c) the debtor's right of withdrawal only arises in a representative capacity. We will not be liable for the dishonor of any check when the dishonor occurs because we set off a debt against this account. You agree to hold us harmless from any claim arising as a result of our exercise of our right of set-off.

**Check Processing.** We process items mechanically by relying solely on the information encoded in magnetic ink along the bottom of the items. This means that we do not individually examine all of your items to determine if the item is properly completed, signed and indorsed or to determine if it contains any information other than what is encoded in magnetic ink. You agree that we have not failed to exercise ordinary care solely because we use our automated system to process items and do not inspect all items processed in such a manner. Using an automated process helps us keep costs down for you and all account holders.

**Check Cashing.** We may charge a fee for anyone that does not have an account with us who is cashing a check, draft or other instrument written on your account. We may also require reasonable identification to cash such a check, draft or other instrument. We can decide what identification is reasonable under the circumstances and such identification may be documentary or physical and may include collecting a thumbprint or fingerprint.

**Truncation, Substitute Checks, and Other Check Images.** If you truncate an original check and create a substitute check, or other paper or electronic image of the original check, you warrant that no one will be asked to make payment on the original check, a substitute check or any other electronic or paper image, if the payment

obligation relating to the original check has already been paid. You also warrant that any substitute check you create conforms to the legal requirements and generally accepted specifications for substitute checks. You agree to retain the original check in conformance with our internal policy for retaining original checks. You agree to indemnify us for any loss we may incur as a result of any truncated check transaction you initiate. We can refuse to accept substitute checks that have not previously been warranted by a bank or other financial institution in conformance with the Check 21 Act. Unless specifically stated in a separate agreement between you and us, we do not have to accept any other electronic or paper image of an original check.

**Remotely Created Checks.** Like any standard check or draft, a remotely created check (sometimes called a telecheck, preauthorized draft or demand draft) is a check or draft that can be used to withdraw money from an account. Unlike a typical check or draft, however, a remotely created check is not issued by the paying bank and does not contain the signature of the account owner (or a signature purported to be the signature of the account owner). In place of a signature, the check usually has a statement that the owner authorized the check or has the owner's name typed or printed on the signature line. For example, if a person provides an account number in response to a telephone solicitation, the telephone solicitor can use the account number to issue a remotely created check to withdraw money from that account.

You warrant and agree to the following for every remotely created check we receive from you for deposit or collection: (1) you have received express and verifiable authorization to create the check in the amount and to the payee that appears on the check; (2) you will maintain proof of the authorization for at least 2 years from the date of the authorization, and supply us the proof if we ask; and (3) if a check is returned you owe us the amount of the check, regardless of when the check is returned. We may take funds from your account to pay the amount you owe us, and if there are insufficient funds in your account, you still owe us the remaining balance.

**Unlawful Internet Gambling Notice.** Restricted transactions as defined in Federal Reserve Regulation GG are prohibited from being processed through this account or relationship. Restricted transactions generally include, but are not limited to, those in which credit, electronic fund transfers, checks, or drafts are knowingly accepted by gambling businesses in connection with the participation by others in unlawful Internet gambling.

**ACH and Wire Transfers.** This agreement is subject to Article 4A of the Uniform Commercial Code - Fund Transfers as adopted in the state in which you have your account with us. If you originate a fund transfer and you identify by name and number a beneficiary financial institution, an intermediary financial institution or a beneficiary, we and every receiving or beneficiary financial institution may rely on the identifying number to make payment. We may rely on the number even if it identifies a financial institution, person or account other than the one named. You agree to be bound by automated clearing house association rules. These rules provide, among other things, that payments made to you, or originated by you, are provisional until final settlement is made through a Federal Reserve Bank or payment is otherwise made as provided in Article 4A-403(a) of the Uniform Commercial Code. If we do not receive such payment, we are entitled to a refund from you in the amount credited to your account and the party originating such payment will not be considered to have paid the amount so credited. If we receive a payment order to credit an account you have with us by wire or ACH, we are not required to give you any notice of the payment order or credit.

**Facsimile Signatures.** Unless you make advance arrangements with us, we have no obligation to honor facsimile signatures on your checks or other orders. If we do agree to honor items containing facsimile signatures, you authorize us, at any time, to charge you for all checks, drafts, or other orders, for the payment of money, that are drawn on us. You give us this authority regardless of by whom or by what means the facsimile signature(s) may have been affixed so long as they resemble the facsimile signature specimen filed with us, and contain the required number of signatures for this purpose. You must notify us at once if you suspect that your facsimile signature is being or has been misused.

**Agency (Power of Attorney) Designation.** Agents may make account transactions on behalf of the parties, but have no ownership or rights at death unless named as Pay-on-Death beneficiaries. The owner does not give up any rights to act on the account, and the agent may not in any manner affect the rights of the owner or beneficiaries, if any, other than by withdrawing funds from the account. The owner is responsible for any transactions of the agent. We undertake no obligation to monitor transactions to determine that they are on the owner's behalf. The owner may terminate the agency at any time, and the agency is automatically terminated by the death of the owner. However, we may continue to honor the transactions of the agent until: (a) we have received written notice or have actual knowledge of the termination of the agency, and (b) we have a reasonable opportunity to act on that notice or knowledge. We may refuse to accept an agent.

**Restrictive Legends.** The automated processing of the large volume of checks we receive prevents us from inspecting or looking for special instructions or "restrictive legends" on every check. Examples of restrictive legends placed on checks are "must be presented within 90 days" or "not valid for more than $1,000.00." For this reason, we are not required to honor any restrictive legend placed on checks you write unless we have agreed in writing to the restriction. We are not responsible for any losses, claims, damages, or expenses that result from your placement of these or other special instructions on your checks.

**Account Transfer.** This account may not be transferred or assigned without our prior written consent.

**Indorsements.** We may accept for deposit any item payable to you or your order, even if they are not indorsed by you. We may give cash back to any one of you. We may supply any missing indorsement(s) for any item we accept for deposit or collection, and you warrant that all indorsements are genuine.

To ensure that your check or share draft is processed without delay, you must indorse it (sign it on the back) in a specific area. Your entire indorsement (whether a signature or a stamp) along with any other indorsement information (e.g., additional indorsements, ID information, driver's license number, etc.) must fall within 1 1/2" of the "trailing edge" of a check. Indorsements must be made in blue or black ink, so that they are readable by automated check processing equipment.

As you look at the front of a check, the "trailing edge" is the left edge. When you flip the check over, be sure to keep all indorsement information within 1 1/2" of that edge.



FRONT OF CHECK

TRAILING EDGE

YOUR INDORSEMENT MUST
BE WITHIN THIS AREA

←—1 ½"—→   Keep your indorsement
out of this area.

BACK OF CHECK

It is important that you confine the indorsement information to this area since the remaining blank space will be used by others in the processing of the check to place additional needed indorsements and information. You agree that you will indemnify, defend, and hold us harmless for any loss, liability, damage or expense that occurs because your indorsement, another indorsement, or information you have printed on the back of the check obscures our indorsement. These indorsement guidelines apply to both personal and business checks.

**Death or Incompetence.** You agree to notify us promptly if any person with a right to withdraw funds from your account(s) dies or becomes legally incompetent. We may continue to honor your checks, items, and instructions until:

(a) we know of your death or incompetence, and (b) we have had a reasonable opportunity to act on that knowledge. You agree that we may pay or certify checks drawn on or before the date of death or legal incompetence for up to ten (10) days after your death or legal incompetence unless ordered to stop payment by someone claiming an interest in the account.

**Fiduciary Accounts.** Accounts may be opened by a person acting in a fiduciary capacity. A fiduciary is someone who is appointed to act on behalf of and for the benefit of another. This account may be opened and maintained by a person or persons named as a trustee under a written trust agreement, or as executors, administrators, or conservators under court orders. You understand that by merely opening such an account, we are not acting in the capacity of a trustee in connection with the trust nor do we undertake any obligation to monitor or enforce the terms of the trust or letters.

**Credit Verification.** You agree that we may verify credit and employment history by any necessary means, including preparation of a credit report by a credit reporting agency.

**Legal Actions Affecting Your Account.** If we are served with a subpoena, restraining order, writ of attachment or execution, levy, garnishment, search warrant, or similar order relating to your account (termed "legal action" in this section), we will comply with that legal action. Or, in our discretion, we may freeze the assets in the account and not allow any payments out of the account until a final court determination regarding the legal action. We may do these things even if the legal action involves less than all of you. In these cases, we will not have any liability to you if there are insufficient funds to pay your items because we have withdrawn funds from your account or in any way restricted access to your funds in accordance with the legal action. Any fees or expenses we incur in responding to any legal action (including, without limitation, attorneys' fees and our internal expenses) may be charged against your account. The list of fees applicable to your account(s) provided elsewhere may specify additional fees that we may charge for certain legal actions.

**Security.** It is your responsibility to protect the account numbers and electronic access devices (e.g., an ATM card) we provide you for your account(s). Do not discuss, compare, or share information about your account number(s) with anyone unless you are willing to give them full use of your money. An account number can be used by thieves to encode your number on a false demand draft which looks like and functions like an authorized check. If you furnish your access device and grant actual authority to make transfers to another person (a family member or coworker, for example) who then exceeds that authority, you are liable for the transfers unless we have been notified that transfers by that person are no longer authorized. Your account number can also be used to electronically remove money from your account. If you provide your account number in response to a telephone solicitation for the purpose of making a transfer (to purchase a service or merchandise, for example), payment can be made from your

account even though you did not contact us directly and order the payment. You must also take precaution in safeguarding your blank checks. Notify us at once if you believe your checks have been lost or stolen. As between you and us, if you are negligent in safeguarding your checks, you must bear the loss entirely yourself or share the loss with us (we may have to share some of the loss if we failed to use ordinary care and if we substantially contributed to the loss).

You agree that if we offer you services appropriate for your account to help identify and limit fraud or other unauthorized transactions against your account, such as positive pay or commercially reasonable security procedures, and you reject those services, you will be responsible for any fraudulent or unauthorized transactions which could have been prevented by the services we offered, unless we acted in bad faith or to the extent our negligence contributed to the loss.

**Telephonic Instructions.** Unless required by law or we have agreed otherwise in writing, we are not required to act upon instructions you give us via facsimile transmission or leave by voice mail or on a telephone answering machine.

**Claim of Loss.** If you claim a credit or refund because of a forgery, alteration, or any other unauthorized withdrawal, you agree to cooperate with us in the investigation of the loss, including giving us an affidavit containing whatever reasonable information we require concerning your account, the transaction, and the circumstances surrounding the loss. You will notify law enforcement authorities of any criminal act related to the claim of lost, missing, or stolen checks or unauthorized withdrawals. We will have a reasonable period of time to investigate the facts and circumstances surrounding any claim of loss. Unless we have acted in bad faith, we will not be liable for special or consequential damages, including loss of profits or opportunity, or for attorneys' fees incurred by you. You agree that you will not waive any rights you have to recover your loss against anyone who is obligated to repay, insure, or otherwise reimburse you for your loss. You will pursue your rights or, at our option, assign them to us so that we may pursue them. Our liability will be reduced by the amount you recover or are entitled to recover from these other sources.

**Early Withdrawal Penalties** *(and involuntary withdrawals).* We may impose early withdrawal penalties on a withdrawal from a time account even if you don't initiate the withdrawal. For instance, the early withdrawal penalty may be imposed if the withdrawal is caused by our setoff against funds in the account or as a result of an attachment or other legal process. We may close your account and impose the early withdrawal penalty on the entire account balance in the event of a partial early withdrawal. See your notice of penalty for early withdrawals for additional information.

**Address or Name Changes.** You are responsible for notifying us of any change in your address or your name. Unless we agree otherwise, change of address or name must be made in writing by at least one of the account holders. Informing us of your address or name change on a check reorder form is not sufficient. We will attempt to communicate with you only by use of the most recent address you have provided to us. If provided elsewhere, we may impose a service fee if we attempt to locate you.

**Resolving Account Disputes.** We may place an administrative hold on the funds in your account (refuse payment or withdrawal of the funds) if it becomes subject to a claim adverse to (1) your own interest; (2) others claiming an interest as survivors or beneficiaries of your account; or (3) a claim arising by operation of law. The hold may be placed for such period of time as we believe reasonably necessary to allow a legal proceeding to determine the merits of the claim or until we receive evidence satisfactory to us that the dispute has been resolved. We will not be liable for any items that are dishonored as a consequence of placing a hold on funds in your account for these reasons.

**Waiver of Notices.** You waive any notice of non-payment, dishonor or protest regarding any items credited to or charged against your account.

**Additional Terms.**

Exhibit 6



## eTELLER REMOTE DEPOSIT SERVICES AGREEMENT

This eTeller Remote Deposit Service Agreement ("Agreement") is made by and between Evolve Bank & Trust, located at 6070 Poplar Avenue, Suite 200, Memphis, TN 38119 ("Evolve"), and the company authorizing and signing this Agreement as identified on the respective eTeller Business Banking Services Application, Raven Agriculture LLC. ("Company"), effective as of the date provided in "Start of Services" Section, below. Evolve and Company each are individually a "Party" and are collectively, "Parties".

| Recitals |
| --- |

**Whereas,** Company has authorized Evolve to provide certain financial services (the "Services") as described in this Agreement.

**Whereas,** Evolve has agreed to provide Services to Company on the terms and conditions described in this Agreement.

**Now Therefore,** in consideration of the mutual promises contained herein and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Evolve and Company, intending to be legally bound, do hereby agree as follows:

**Start of Services.** Upon receipt of Company's fully completed eTeller Business Banking Services Application ("Application"), Evolve shall determine whether to accept the Application and provide the Services requested by Company. If the Application is accepted, (i) Company will be notified and assigned processing identification credentials, and (ii) the date on which Company signed the Application will be the effective date of this Agreement ("Effective Date"). By signing this Agreement, Company agrees and acknowledges that the Application and Fee Structure are incorporated herein by reference and made a part of this Agreement.

**Other Agreements.** Evolve and Company have executed other agreements ("Other Agreements") concerning products and services offered. Those Other Agreements are still in full force and effect for those products and services.

## REMOTE DEPOSITE CAPTURE

Remote Deposit Capture enables Company to deposit checks with Evolve by using check conversion technology to convert original checks to "Substitute Checks", as defined by Laws and Rules, as hereinafter defined, or other electronic representation that is processed for check collection (collectively referred to herein as "Items"). Company shall undertake prudent measures designed to verify the identity of individuals issuing Items to Company. Company may process an original check (excluding foreign checks drawn on a financial institution that is located outside of the United States or Territories of the United States), by capturing its image front and back along with the MICR line of the original check and the encoded check amount into a digital image for transmission to Evolve ("Image"). The original checks will be stamped "ELECTRONICALLY PROCESSED" by the Company and will remain with the Company for such period as required by the Rules, before being destroyed. Company shall not submit, or allow to be submitted to Evolve, any forged, altered or fraudulent check.

| Receipt and Deposit of Files |
| --- |

Company shall prepare a file containing an electronic listing of all images ("Items File") for transmission to Evolve. Company shall retain data on file adequate to maintain compliance with applicable Rules and to permit remaking of the Items File for five (5) Business Days following the date of its transmittal to Evolve as provided herein, and shall provide such Items File(s) to Evolve upon its request. Evolve, in its sole and absolute discretion, will establish

for Company certain risk parameters ("Exposure Settlement Limits") which the Items File must comply with. Images in the Items File must be of such quality that the information on the image can clearly be read by sight review. If Evolve notes an error in an Items File, it may either reject the File or correct the error. Following review, Items Files that appear to be (i) of appropriate image quality, (ii) balanced and without error, and (iii) created in compliance with the Laws and Rules will be accepted by Evolve ("Accepted File") for deposit to the Settlement Account, as hereinafter defined. Evolve shall indicate Items File acceptance by the posting of the Items File contents to the Settlement Account. Company shall remain liable for any Items File or Image that (i) is not actually received by Evolve or that (ii) is intercepted, altered or otherwise deposited by an unauthorized third party. Evolve shall have no obligation to accept an Items File and may reject any Items File without liability therefore. Evolve shall solely determine the manner in which Items will be presented for payment to the drawee bank and shall solely select the clearing agents used to collect and present the Items. Selection of such clearing agents shall be considered to have been designated by Company and Evolve shall not be liable for the negligence or delay of any clearing agent. Items File(s) received before 5:00 p.m. central time on a Business Day are posted to the Settlement Account the same day. Items Files received after 5:00 p.m. central time or on a non-Business Day will post on the next Business Day.

### Returned Items

If Items previously deposited by Company are dishonored and returned unpaid by the drawee bank, Company understands and agrees that Evolve may charge back an image of the Item to the Settlement Account. Dishonored Items are the sole responsibility of Company. Company may request that Evolve process returned Items according to Company's written instructions ("Special Instructions"). Changes to Special Instructions shall not become effective until acknowledged in writing and accepted by Evolve. Notwithstanding the foregoing, Evolve has no obligation to re-present any returned Item and may choose to disregard the Special Instructions at any time and charge a returned Item, as defined in Company's Deposit Account Agreement, back to the Settlement Account. Following initial presentment or any re-presentment of an Item, if such Item remains unpaid, Company will be notified and Evolve shall have no further liability to Company for such re-presented Item. In no event will Evolve re-present an Item in excess of the limit established or permitted by the Laws and Rules.

### Availability of Funds and Holds

Evolve shall grant provisional credit to the Settlement Account for the total amount of an Accepted File in accordance with prudent business timeframes as permitted by Laws and Rules. Company authorizes Evolve to place a hold on funds in the Settlement Account if Evolve has concerns about or doubts the validity or collectability of an Item.

### Retention and Destruction of Original Items

Appropriate commercially reasonable security measures shall be taken by Company to ensure that an original check (i) can only be accessed by authorized personnel, (ii) will not be duplicated, (iii) will be scanned only one time, (iv) will not be otherwise deposited or negotiated in any form with another bank, credit union or other entity if it has been scanned and accepted for processing, and (v) is secured so that the information contained on the original check is not improperly disclosed. Evolve shall have no liability to Company for any loss, cost or damage related to or arising out of or from Company's retention of paper checks, the method of securing such paper checks, the destruction of such paper checks or the method of destruction of such paper checks chosen by Company.

### Scanners

Since Item scanners must be compatible with the Software, Company shall purchase, lease or rent all necessary scanners from Evolve pursuant to a separate agreement. Company agrees not to move any scanner from the original installation location without the express written consent of Evolve. Company agrees that Evolve has provided a scanner for Company's use while this Agreement is in effect. Evidence of Evolve ownership is the asset tag number EV00156 _____ attached to the scanner. Company agrees that the scanner will be returned to Evolve at 6070 Poplar Avenue, Suite 200, Memphis, Tennessee 38119, within 30 days from the termination date or Evolve will be authorized to charge the Designated Account $500 for the non-return of Evolve owned equipment.

### Representations and Warranties of Company

Regarding Items, Company represents and warrants to Evolve: (i) Company shall only deposit Items that are authorized by this Agreement; (ii) the image is a digitized image of the front and back of the check and accurately represents all of the information on the front and back of the check as of the time Company converted the check to an Imaged Item; (iii) the Item contains all endorsements applied by parties that previously handled the check in any form for forward collection or return; (iv) no subsequent transferee, including but not limited to Evolve, a collecting or returning bank, drawer, drawee, payee or endorser, will be asked to pay the original item from which an image was created or duplication made (whether paper or electronic); (v) no subsequent transferees of an Item, including but not limited to Evolve, a collecting or returning bank, drawer, drawee, payee or endorser, shall sustain a loss as the result of the fact that an image of an Item was presented for payment or returned instead of the original Item; (vi) Company is in compliance with all federal, state and local laws pertaining to Check 21 deposits and as described in the Check 21 Act and Regulation CC, and all other rules and directives of the Federal Reserve Board and the U.S. Treasury Department concerning Check 21 services; (vii) Company has complied with all requirements of the U.S.A. Patriot Act, the Bank Secrecy Act, the requirements of the Office of Foreign Assets Control and all other laws applicable to its banking

## GENERAL PROVISIONS

### Authorized Company Administrator and User

As a condition to Evolve's obligations hereunder, (i) Company shall designate one or more individuals (each a "Company Administrator") who shall be authorized on behalf of Company to execute and deliver to Evolve any required documents in conjunction with this Agreement, and (ii) such Company Administrator shall be responsible for (a) designating one or more individuals ("Authorized User(s)") authorized to initiate transactions and manage data related to Services, (b) establishing limits on each Authorized User's authority to perform under this Agreement, and (c) terminating any Authorized User as provided herein. Although Evolve is only required to act upon the instructions of an Authorized User, Evolve may, in its sole discretion, execute transactions initiated by any individuals authorized by Company to sign checks on Company's accounts. Any signature cards or other documents establishing authorized signatories for Company deposit accounts are hereby incorporated by reference and made a part hereof. Authorized Users with the ability to transfer funds have this authority on Company accounts as designated by a Corporate Resolution.

### Dual Authorization

Evolve strongly recommends that Company utilize any dual authorization procedures made available through any Internet applications, such as the Evolve eTeller software. Evolve reserves the right, in its sole discretion but without obligation of any kind, to require dual authorization of certain Services decisions. Although dual

authorization is a helpful tool, neither it, nor any other security tool, can guarantee security, including, for example if two sets of Authorized User ID's and login credentials are compromised, if an Authorized User is created with the authority to initiate and approve, or if fraudulent Authorized Users are established.

## Transmittal of Issues

Company, an Authorized User or a Third Party may initiate Transfer Requests to Evolve hereunder on behalf of Company. Notwithstanding anything to the contrary herein, Evolve shall be entitled to deem any person having knowledge of any Security Procedure, as hereinafter defined, including any Third Party, to be an Authorized User. The Company Administrator or an Authorized User shall transmit Transfer Requests to Evolve using the Evolve eTeller software and in the format and to the locations(s) specified by Evolve and in compliance with the formatting and other requirements set forth in the Rules and file specifications, as applicable. Company may not reinitiate Transfer Requests except as prescribed by the Rules and authorized by Evolve.

## Account Reconciliation

Company agrees to reconcile its Evolve accounts daily and notify Evolve promptly of any discrepancy between Company's records and the information shown on any periodic statement or within Evolve's eTeller software. If Company fails to notify Evolve in writing of any discrepancy within ten (10) Business Days of receipt of a periodic statement containing such information, Company agrees that Evolve shall not be liable for any other losses resulting from Company's failure to give such notice or any loss of interest or any interest equivalent with respect to an entry shown on such periodic statement. If Company fails to notify Evolve in writing of any such discrepancy within thirty (30) days of receipt of such periodic statement, Company shall be precluded from asserting such discrepancy against Evolve. Receipt shall be calculated as 4 calendar days from when Evolve places the periodic statement in the U.S. Postal Service, or the next Business Day if placed online within Evolve's eTeller software.

## Terms of Use

To use the Services, Company must have at least one checking account at Evolve, acquire the computer hardware and software required to access the Services, World Wide Web access via a secure Internet Service Provider (ISP), an internet browser that supports a minimum 128 bit encryption standard, and a valid e-mail address.

## Software

Evolve may select software and related user materials ("Software") for use in Evolve's eTeller Remote Deposit service and the processing of Transfer Requests. From time to time, modifications or updates to the Software may be available. Company agrees to adopt such updates or modifications as they become available. Company acknowledges that any Software supplied by Evolve is the property of Evolve or a third party from whom Evolve may have licensed rights in Software and that Evolve claims and reserves all rights and benefits therein afforded under copyright and other laws. Company's license of and permission to use the Software is non-exclusive and nontransferable, and it extends only to Company's own use of such Software for the purpose of processing Services as set forth in this Agreement. Company further acknowledges and agrees that the Software is valuable, confidential and proprietary property of Evolve, or a third party, and agrees not to transfer, distribute, copy, reverse compile, modify or alter the Software.

## Security Procedures and Network Security

Company is responsible for establishing and maintaining commercially reasonable security procedures and safeguards (to include Company's computer systems, networks, and their information stored on or transmitted through Company's network) to protect against unauthorized requests for Services and data breach of Company data. Such measures include but are not limited to data security audits, promptly installing security patches, anti-virus, spyware, malware, key logger detection software, firewalls, and any other crimeware protective action, software programs or hardware solutions. Company will be solely responsible for the maintenance and protection of its computer and network systems against unauthorized access. Company will be solely responsible for any and all losses and damages arising from any unauthorized access to the Services through the use of Company computers, networks, Authorized Users, or through the use of Access Codes, as hereinafter defined.

Company agrees to comply with Evolve's security procedures ("Security Procedures") identified below and provided for under Laws and Rules in transmitting all files pursuant to Services outlined in this Agreement ("File Transmission"). Company acknowledges that (i) the Security Procedures are designed to verify the authenticity of the File Transmission, and (ii) they are not designed or intended to detect data or content errors in the File Transmission. If a File Transmission is authorized or issued by Company, or on Company's behalf, or Company otherwise benefits from such file, Company agrees to be bound by the data contained in the File Transmission whether or not Evolve complies with the Security Procedures.

A.  Company is strictly responsible to establish and maintain policies, procedures and systems to: (i) safeguard against unauthorized File Transmissions; (ii) protect against unauthorized use or access of Protected Information; and (iii) Protect the confidentiality and integrity of Protected Information.

B.  Company must implement commercially reasonable policies, procedures and systems to prevent and detect the occurrence of a data breach. These policies and procedures should include escalation of any breach to appropriate personnel within the Company in a timely fashion, and prompt notice to Evolve. If Company is affected by a known or suspected data breach, Company agrees to cooperate and coordinate investigative efforts with Evolve and/or its third party consultant as mutually agreed. Company and Evolve shall immediately commence and diligently pursue an investigation of the circumstances to determine (i) if a data breach has actually occurred, (ii) the scope of the data breach, including the type and amount of data affected, (iii) the risk that the affected data will be misused, and (iv) what steps are necessary to prevent further unauthorized access to Company data.

C.  In the event of a breach of the Security Procedure, Company agrees to assist Evolve in determining the manner and source of the breach. Such assistance shall include, but shall not be limited to, providing Evolve or Evolve's agent access to Company's hard drive, storage media and devices, systems and any other equipment or device that was used in breach of the Security Procedure. Company further agrees to provide to Evolve any analysis of such equipment, device, or software or any report of such analysis performed by Company, Company's agents, law enforcement agencies, or any other third party. Failure of Company to assist Evolve shall be an admission by Company that the breach of the Security Procedure was caused by a person who obtained access to transmitting facilities of Company or who obtained information facilitating the breach of the Security Procedure from Company and not from a source controlled by Evolve.

D.  Company represents and warrants that no individual will be allowed to initiate File Transmissions in the absence of proper supervision and safeguards.

E.  Company agrees to maintain the confidentiality of the Security Procedures and prevent the disclosure of such procedures except on a need to know basis. If Company believes or suspects that any such information or instructions have been or may have been compromised, known or accessed by any unauthorized person, Company agrees to notify Evolve immediately by calling (870) 933-2490, followed by written confirmation to Evolve Bank & Trust, Business Banking Services, P.O. Box 4097, Jonesboro, AR 72403 or email to bbanking@getevolved.com. The occurrence of unauthorized access will not affect the processing of a File Transmission prior to Evolve's receipt of such written notification and within a reasonable time period thereafter.

111 East Huntington Avenue, Suite A   Jonesboro, Arkansas 72401
Office: 870-933-2490     844-225-4875     bbanking@getevolved.com
May 2014 Contract Revision

5

F.  Company's unique Authorized User passwords, access codes, PIN, security devices, or authentication techniques and related instructions ("Access Codes") as Evolve may require from time to time will be made available to the Company. Company agrees that Access Codes are strictly confidential and must be safeguarded. Company shall have sole responsibility for controlling the distribution and maintaining the confidentiality of the Access Codes. Company acknowledges that anyone with knowledge of Company's Access Codes will be able to send File Transmissions to Evolve that will access the Settlement Account. Company authorizes Evolve to execute Services pursuant to the instructions of anyone who has provided Evolve with proper Access Codes and acknowledges that Evolve shall conclusively presume that any person possessing Company's Access Codes is a Authorized User and will regard their request for Services as being authorized by Company. If Company becomes aware of the unauthorized use of Access Codes, or suspects that an unauthorized use may occur, or if Company has terminated authorization for a Company Administrator, Company shall immediately notify Evolve, in writing, to deactivate the respective Access Code. IN NO EVENT WILL EVOLVE BE RESPONSIBLE FOR ANY DAMAGES RESULTING, EITHER DIRECTLY OR INDIRECTLY, FROM THE UNAUTHORIZED USE OF THE ACCESS CODES PRIOR TO SUCH NOTICE AND WITHIN A REASONABLE TIME PERIOD THEREAFTER.

G.  Company agrees to defend all claims and indemnify and hold Evolve harmless from and against any loss, damages, or expenses, including but not limited to attorney's fees, caused by the failure of Company, their employees or agents to keep the Security Procedures confidential and secure.

H.  Evolve may from time to time, and at its sole discretion, change the Security Procedures or establish additional Security Procedures.

I.  Company agrees that Evolve may delay the execution of a request for Services until Evolve has completed any security measures Evolve, in its sole discretion, deems warranted.

---

**Confidential Information**

---

For purposes of this Agreement, "Confidential Information" means information, knowledge and data that is or will be used, developed, obtained or owned by a Party relating to its business, products and/or services, including fees, pricing, designs, marketing plans, strategies, analyses, forecasts, formulas, drawings, photographs, reports, records, computer software (whether or not owned by, or designed for, a Party), other operating systems, applications, program listings, flow charts, manuals, documentation, data, databases, specifications, technology, inventions, new developments and methods, improvements, techniques, trade secrets, devices, products, methods, know-how, processes, financial data, customer lists, contact persons, cost information, executive information, regulatory matters, personnel matters, accounting and business methods, trade secrets, copyrightable works and information with respect to any merchant, vendor, supplier, customer, sales group, sales officer, sales associate, reseller or independent contractor of a Party, in each case whether patentable or unpatentable and whether or not reduced to practice, and all similar and related information in whatever form; provided, however, that Confidential Information shall not include information that (i) is generally known to the public other than as a result of disclosure by a Party in breach of this Agreement; (ii) is required to be disclosed pursuant to applicable Law; or (iii) that is reasonably necessary to disclose in connection with enforcing a Party's rights under or defending against allegations that such Party has breached this Agreement. Each Party acknowledges that the Confidential Information of the other Party ("Owning Party") constitutes a valuable, special, and unique asset used by the Owning Party and will be used by the Owning Party in its business to obtain a competitive advantage over its competitors. Except as necessary to provide Services hereunder, the Party who is not the Owning Party ("Receiving Party") will not, directly or indirectly, disclose or cause or permit to be disclosed, to any person or entity whatsoever, or utilize or cause or permit to be utilized, by any person or entity whatsoever, any Confidential Information of the Owning Party. Each Party also agrees to preserve and protect the confidentiality of third party Confidential Information to the same extent, and on the same basis, as such Party's own Confidential Information. Each Party further agrees that any breach by the Receiving Party of any of the provisions of Section 7, Security Procedures and Network Security of this Agreement may cause irreparable harm to the Owning Party that could not be adequately compensated by monetary damages and that, in the event of

such a breach, each Party shall waive the defense in any action for specific performance that a remedy at law would be adequate, and the Owning Party shall be entitled to specifically enforce the terms and provisions of Section 3of this Agreement without the necessity of proving actual damages or posting any bond or providing prior notice, in addition to any other remedy to which the Owning Party may be entitled at law or in equity.

### Privacy Laws

During the course of this Agreement, a Party may receive from the other Party certain information that is protected under state and federal financial and healthcare information privacy laws, including applicable sections of the federal Gramm-Leach-Bliley Act ("GLBA") and the Health Insurance Portability and Accountability Act of 1996 (HIPAA"), as may be amended from time to time (collectively, "Protected Information"). The Receiving Party shall not use or disclose Protected Information other than as necessary to implement this Agreement, to maintain data bases for the provision of Services, or as permitted by Laws and Rules. The Receiving Party shall safeguard and properly dispose of Protected Information as if it were its own using commercially reasonable measures and, where applicable, as required by GLBA, HIPAA and Laws and Rules. If a Party is requested in any proceeding to disclose any Protected Information belonging to another Party, it shall provide prompt notice of such request (and any resulting disclosure) to the Party owning such Protected Information so that an attempt at protection can be made.

### Financial Information and Audit

Evolve may from time to time request financial or other information from Company in order to evaluate a continuation of the Services to be provided by Evolve hereunder and/or adjustment of any limits set by this Agreement. Company agrees to provide the requested information immediately upon request by Evolve, in the form required by Evolve. Company authorizes Evolve to investigate or reinvestigate at any time any information provided by Company in connection with this Agreement or the Services. Company further authorizes (i) Evolve to make any credit inquiries it considers necessary to review the acceptance and continuation of this Agreement, and (ii) any credit reporting agency to provide such information. If necessary to make credit inquiries as to a Company owner(s) or affiliate, Company shall promptly obtain authorization for Evolve to do so. Upon request by Evolve, Company hereby authorizes Evolve to enter Company's business premises for the purpose of ensuring that Company is in compliance with this Agreement and Company specifically authorizes Evolve to perform an audit of Company's operational controls, risk management practices, staffing and the need for training and ongoing support, and information technology infrastructure. Company hereby acknowledges and agrees that Evolve shall have the right to mandate specific internal controls at Company's location(s) and Company shall comply with any such mandate. In addition, Company hereby agrees to allow Evolve to review available reports of independent audits performed at the Company location related to information technology, the Service and any associated operational processes. Company agrees that if requested by Evolve, Company will complete a self-assessment of Company's operations, management, staff, systems, internal controls, training and risk management practices that would otherwise be reviewed by Evolve in an audit of Company. If Company refuses to provide the requested information, or if Evolve concludes, in its sole discretion, that the risk of Company is unacceptable, if Company violates this Agreement or the Laws and Rules, or if Company refuses to give Evolve access to Company's premises, Evolve may terminate the Service and this Agreement according to the provisions hereof.

If material changes occur to information in the Application, Company ownership, products and methods of selling, or methods of using Services, Company shall provide written notice to Evolve not later than 5 Business Days prior to the change, unless another time period is provided herein for the change. Any updated information requested by Evolve shall be provided within 5 Business Days of the request. Evolve reserves the right to re-price or terminate Services to Company based on changes to the information provided in the Application and the ongoing financial strength of the Company.

111 East Huntington Avenue, Suite A   Jonesboro, Arkansas 72401
Office: 870-933-2490      844-225-4875      bbanking@getevolved.com
May 2014 Contract Revision

7

## Fees and Charges

Company will pay Evolve (i) applicable fees for Services, forms or equipment in accordance with the Fee Structure of this Agreement, (ii) licensing and other third party fees and assessments that are passed through to Company, and (iii) any applicable additional ancillary and pass-through fees and assessments related to the Services, forms or equipment provided under this Agreement (collectively, "Fees"). Fees will be calculated and debited from the Settlement Account, or as otherwise provided herein. Increases to any third party Fees that are passed through to Company are effective upon any such increase. Evolve may revise the Fees from time to time upon prior notice to Company. Company shall pay all taxes and other charges imposed by any governmental authority on the Services.

## Settlement Accounts

Company will provide Evolve with all required and ever-current information and authorizations for the one or more Evolve held commercial demand deposit account(s) Company desires to use to facilitate payment of available funds and deposits relating to Services ("Settlement Account") and will provide Evolve with at least 10 days advance written notice of any change. All obligations and authorizations as to a former Settlement Account shall continue forward to the new Settlement Account. Evolve is authorized to initiate debit/credit entries to the Settlement Account as to Transfer Requests, Fees and other charges relating to this Agreement and to debit the Settlement Account for any amounts Company owes or must repay to Evolve hereunder. Company will indemnify and hold harmless Evolve for any action taken against the Settlement Account and will also indemnify and hold harmless any other depository institution for acting in accordance with any instruction regarding the Settlement Account. If required due to the potential for heightened risk, Company agrees that it may later be required to establish and maintain a non-interest bearing deposit account at Evolve ("Reserve Account") in an amount determined by Evolve to protect its interests. Evolve may deposit to the Reserve Account incoming funds from processed Transfer Requests and amounts it would otherwise be obligated to pay Company, and Evolve will have sole control of the Reserve Account.

## Security Interest; Recoupment and Set-off

This Agreement will constitute a security agreement under the Uniform Commercial Code of Arkansas. Company grants Evolve a security interest in and lien upon: (i) all funds at any time in any Evolve Company accounts; (ii) future Services related proceeds; and (iii) all Company's rights to funds or matters relating to this Agreement including, without limitation, all rights to receive any payments or credits under this Agreement (collectively, the "Secured Assets"). Upon request of Evolve, Company will execute one or more financing statements or other documents to evidence this security interest. Company represents and warrants that no other person or entity has or will be granted a security interest in the Secured Assets without Evolve's prior written consent. These security interests and liens will secure all of Company's obligations under this Agreement and other agreements referenced herein. This security interest may be exercised by Evolve without notice or demand of any kind by making an immediate withdrawal or freezing the secured assets in the Reserve Account, or any other applicable account. Evolve will have all rights afforded under the Uniform Commercial Code and any other applicable Law and in equity, and is authorized by Company to offset any amounts owed to Evolve hereunder from the Reserve Account or any other applicable account.

## Events of Default

The following will each individually constitute an ("Event of Default"): (i) the occurrence of any Services originated by Company that falls beyond the Exposure Settlement Limits established by Evolve; (ii) the failure by Company to pay any undisputed amount owed to a Party on or before the date on which such amount is due; (iii) Company's financial condition changes in a materially adverse manner; (iv) any of Company's property or other accounts are garnished or attached; (v) a Party assigns its assets generally for the benefit of creditors; (vi) a proceeding is commenced by or against a Party under any bankruptcy, insolvency or similar Laws seeking an order to adjudicate such Party as bankrupt or insolvent or other relief with respect to such Party or its debts, or seeking appointment of a receiver or similar official for such Party or for any substantial part of such Party's assets; (vii) a Party fails to perform or otherwise breaches its covenants or material obligations set forth in this Agreement, and such failure continues for a period of 15 days after the breaching Party receives written notice of the breach; (viii) any representation or warranty by a Party is or becomes false or misleading in any material respect as of the date made or at any time during the term of this Agreement; (ix) a reasonable determination by Evolve that Company is involved in fraud or illegal use of Services; (x) a Party's material violation of the Laws or Rules. Upon the occurrence of an Event of Default by Company, Evolve may take one or more of the following actions: (a) suspend Services to Company, (b) require creation of a Reserve Account, or (c) immediately terminate this Agreement, or as may otherwise be permitted by this Agreement or applicable Laws. Upon the occurrence of an Event of Default by Evolve, Company may take action as to terminate this Agreement, or as permitted hereunder or by applicable Laws. Company agrees that illegal use of Services will be deemed an action of default and/or breach of contract and, in such event, this Agreement, Company's Evolve account(s) and other related services may be terminated at Evolve's discretion. Company further agrees that should illegal use occur, Company waives any right to sue Evolve for such illegal use or any activity directly or indirectly related to it, and Company agrees to indemnify and hold Evolve harmless from any suits, legal action, or liability directly resulting from such illegal use.

## Term and Termination

A.    This Agreement may be terminated by either party effective upon 30 days prior notice to the other party, unless a sooner termination is required under the Events of Default section above.

B.    Evolve shall have the right to terminate this Agreement for cause with written notice to Company.  For cause includes but is not limited to, fraud, misrepresentation, ineligible transactions, illegal transactions, regulatory requirements, or any other reason deemed by Evolve to be material.

C.    Following the termination of this Agreement, each Party shall remain liable for its breach of its representations, warranties, covenants and obligations during the term of this Agreement. In addition, Company (i) shall maintain in its Settlement Accounts enough funds to cover all Services for which provisional credit was given, and all Fees and other amounts for which Company is liable until paid, for a period of 180 days to cover the related trailing activity, (ii) authorizes Evolve to charge such Settlement Accounts, or any other Evolve held Company accounts, for such amounts, and (iii) will remain liable to Evolve for all liabilities occurring beyond such 180 day period. If the amount in the Settlement Accounts is not adequate, Company agrees to promptly pay any amount owing to Evolve, together with any costs and expenses incurred to collect such amount. Within 7 days after termination of this Agreement, Company will, at its expense, promptly uninstall and remove all software provided for the Service from its computers and return to Evolve all hardware and equipment, if any, provided by Evolve for the Service. Company will be responsible and liable to Evolve for the replacement cost of all lost, stolen or damaged equipment that was provided by Evolve to Company in connection with the Service.

### Representations and Warranties of Company

In addition to other representation and warranty provisions elsewhere in this Agreement , (I) all information submitted to Evolve by and concerning Company is true and complete and, to the extent applicable, reflects in all material respects the business, financial condition, and principal partners, owners, or officers of Company; (ii) Company and each Company Administrator has the power to execute and perform its obligations under this Agreement; (iii) there is no action, suit or proceeding pending or to Company's knowledge threatened which if decided adversely would materially and adversely affect Company's financial condition; (iv) all Transfer Requests and business transactions of Company are bona fide and Company conducts its business and originates Services related activity in compliance with the Laws and Rules; (v) Services related data submitted to Evolve do not contain computer viruses or other harmful, intrusive, or invasive codes and Company maintains its computer system in compliance with the Security Procedures and Network Security section of this Agreement. (vi) Company is not engaged or affiliated with any businesses, products or methods of selling other than those set forth on the Application, except as any such change has been provided to Evolve in compliance with this Agreement.

### Liability; Indemnification; Limitation

A.  By Company. In addition to other indemnification and liability provisions elsewhere in this Agreement, Company will be liable for, hold harmless and indemnify Evolve, its licensors and providers of the Services, and its and their respective directors, officers, shareholders, employees and agents, from and against all claims, costs, damages, losses and expenses, including reasonable attorneys' fees and other legal expenses ("Damages") reasonably incurred to the extent arising from or in connection with Company's responsibilities under this Agreement or receipt of Services including, without limitation, (i) the wrongful acts or omissions of Company, or any person acting on Company's behalf in connection with the Company's use of the Services under this Agreement, including without limitation (a) the breach by Company of any provision, representation or warranty of this Agreement, (b) the negligence or willful misconduct (whether by act or omission) of Company or its customers or any third party on behalf of Company, (c) any misuse of the Services by Company, or any third party within the control or on behalf of Company, or (d) the failure by Company to comply with applicable Laws and Rules; (ii) any act or omission of Company that is in accordance with this Agreement or instructions from Company; or (iii) any claims, loss or damage resulting from Company's breach of, or failure to perform in accordance with, the terms of this Agreement.

B.  By Evolve. In performing Services, Evolve shall be liable only for its gross negligence or willful misconduct in performing the Services. Evolve shall not otherwise be responsible to Company for any action taken, allowed or omitted by or under this Agreement, or for any liability, loss, claim or damage arising from a cause beyond Evolve's control, including, but not limited to , weather and failure of communication or transportation facilities or from delay occasioned in transit of data or processed work.

C.  /In no event shall a Party be liable to the other under any theory of tort, contract, strict liability, or other legal or equitable theory for any lost profits, exemplary, punitive, special, incidental, indirect or consequential damages, including without limitation any loss of use or loss of business, revenue, profits, opportunity or good will, under any theory of tort, contract, indemnity, warranty, strict liability or negligence, even if such party has been advised or should have known of the possibility of such damages, or for any Damages relating to any third party patent claims, each of which is hereby specifically excluded by agreement of the Parties notwithstanding anything to the contrary herein. No Party will be liable for any Damages, or for failure or delay in their performance of this Agreement, if such Damages, failure or delay is contemplated in this Agreement. Further, Company shall not be entitled to recover any Damages to the extent that the amount of such Damages were incurred, increased, or extended as a result of Company's breach of this Agreement or by the negligence, willful misconduct, and violation of law or bad faith of Company. The aggregate liability of Evolve for indemnification hereunder for any Damages will not exceed in the aggregate the amount of charges for Services paid by Company over the previous 6 month period, calculated from the date the liability accrued. Notwithstanding the foregoing or anything else to

111 East Huntington Avenue, Suite A   Jonesboro, Arkansas 72401
Office: 870-933-2490      844-225-4875    bbanking@getevolved.com
May 2014 Contract Revision

16

the contrary herein, Company agrees to indemnify Evolve for the full amount of any Damages that are incurred by Evolve under this Agreement.

EVOLVE'S REPRESENTATIONS, WARRANTIES, OBLIGATIONS AND LIABILITIES, AND COMPANY'S RIGHTS AND REMEDIES, SET FORTH IN THIS AGREEMENT ARE EXCLUSIVE. EVOLVE AND ITS LICENSORS HEREBY DISCLAIM, AND COMPANY HEREBY WAIVES AND RELEASES EVOLVE, ITS LICENSORS AND THEIR RESPECTIVE OWNERS, OFFICERS AND EMPLOYEES FROM ALL OTHER REPRESENTATIONS AND WARRANTIES OF ANY NATURE, OBLIGATIONS AND LIABILITIES WHETHER EXPRESS OR IMPLIED, ARISING BY LAW OR OTHERWISE, WITH RESPECT TO ANY AND ALL DOCUMENTS, SERVICES, INFORMATION, ASSISTANCE, SOFTWARE PRODUCTS OR OTHER MATTERS PROVIDED UNDER THIS AGREEMENT, INCLUDING WITHOUT LIMITATION (I) ANY IMPLIED WARRANTY OF MERCHANTABILITY, FITNESS FOR A SPECIFIC USE, PURPOSE OR APPLICATION, OR OTHER IMPLIED CONTRACTUAL WARRANTY; (II) ANY IMPLIED WARRANTY ARISING FROM COURSE OF PERFORMANCE, COURSE OF DEALING OR USAGE OF TRADE; (III) ANY WARRANTIES OF TIMELINESS OR NON-INFRINGEMENT; AND (IV) ANY OTHER WARRANTY WITH RESPECT TO QUALITY, ACCURACY OR FREEDOM FROM ERROR.

Company and Evolve agree and acknowledge that the limitations of liability in this Section are a bargained for allocation of risk and liability, and agree to respect such allocation of risk and liability. Each Party agrees and acknowledges that the other party would not enter into this Agreement without the limitations of liability set forth in this Section.

## Trademarks and Branding

No Party may use the name, trademarks or branding of another Party without the express written consent of the trademark owner and shall not indicate, directly or indirectly, that any Party endorses or is connected in any way with any other Party.

## Third Parties

Other than Evolve, a third party may be providing services, special equipment or software to assist Company originate Service related activity hereunder ("Third Party"). Company (i) agrees any Third Party is acting as Company's authorized agent in the performing Company-related functions as defined in this Agreement, and (ii) agrees to assume full responsibility and liability for any failure of a Third Party to comply with the Laws, Rules or this Agreement. Evolve will not be liable for any losses or additional costs incurred by Company as a result of any error by a Third Party or a malfunction of equipment provided by a Third Party.

## Laws and Rules

The Parties agree to comply with all applicable federal, state, and local laws, rules, regulations, including Protected Information and Operating Circulars ("Laws") and with (i) all applicable rules and operating guidelines issued by the National Automated Clearing House Association ("ACH Rules") or other clearing agent and (ii) any policies and procedures, including all Services related procedures provided to Company from time to time by Evolve (collectively, the "Rules"). The Laws and Rules are incorporated into this Agreement as if they were fully set forth herein. Each Party will be responsible for knowing the requirements of the applicable Laws and Rules, and Company will have the responsibility to fulfill any compliance requirement or obligation that Evolve and/or Company may have under the Laws and Rules applicable to Services under this Agreement, including without limitation sanction laws administered by the Office of Foreign Assets Control, and other requirements relating to anti-money laundering, including but not limited to the federal Bank Secrecy Act, the USA PATRIOT Act and any regulations of the U.S. Treasury Department to implement such Acts, as amended from time to time. Company shall be liable for the amount of any fines and/or liabilities assessed against Evolve for any violation of the Laws or

111 East Huntington Avenue, Suite A   Jonesboro, Arkansas 72401
Office:  870-933-2490      844-225-4875      bbanking@getevolved.com
May 2014 Contract Revision

11

Rules that are due to the acts or omissions of Company or any other Third Party providing services to Company that in any way relate to Services under this Agreement.

## Additional General Provisions

Certain general provisions apply to this Agreement as follows: (i) this Agreement, Addendums and any other documents or writings referenced herein constitute the entire agreement between the Parties as to the subject matter hereof, and all prior or other agreements or representations, written or oral, are superseded by this Agreement as to the subject matter hereof; (ii) the laws of the State of Arkansas shall govern this Agreement and proper venue for any dispute arising from this Agreement shall be in any state or federal court with jurisdiction in West Memphis or Crittenden County, Arkansas; (iii) this Agreement may be assigned by Evolve, and may be assigned by Company with the prior written consent of Evolve; (iv) a Party shall send written notices and communications to the other Party at the respective address provided on the first page of this Agreement or Application, or as otherwise noticed to the other Party in writing. Any written notice under this Agreement will be deemed given upon the earlier of: (a) actual receipt indicated by confirmation receipt if by hand delivery, facsimile, United States mail, private courier, or electronic mail, or (b) five days after being deposited in the United States mail, and addressed as provided above. If written notice is not otherwise required, Evolve may provide a notice verbally to Company, effective upon receipt or as otherwise specified, if followed up with a written confirmation notice via any delivery method; (v) amendments or additions to this Agreement may be proposed by Evolve and Company will be notified of any such proposed amendment or addition via a periodic statement or other form of written notice. Company will be deemed to have agreed to the change if Company continues to originate Services related activity after 2 days following the time at which notice is deemed given per this section of the Agreement; notwithstanding the previous sentence, changes to Fees that may be assessed under this Agreement will be effective upon notice (by any method) to Company, unless a later effective date is provided; (vi) each Party will immediately notify the other of any bankruptcy, receivership, insolvency or similar action initiated by or against such Party or any of its principals and will include the other Party on the list of creditors as filed with the Bankruptcy Court and failure to do so will be cause for immediate termination or any other action available to such Party under applicable Laws or Rules. As an executory contract to make a loan, or extend other debt financing or financial accommodations to or for the benefit of Company, this Agreement cannot be assumed or assigned under Company's bankruptcy; (vii) each Party is solely responsible for its employees' actions while in such Party's employment, including assuring such Party's compliance with this Agreement; (viii) all provisions that by their context are intended to survive termination of this Agreement will so survive, including all liability and indemnification terms herein; (ix) the failure of a Party to object to or to take any affirmative action with respect to any conduct by the other Party which is in violation, breach, or default of the terms hereof, shall not be construed as a waiver thereof, nor of any future breach or subsequent violation, breach or default.

## Force Majeure

If performance by any Party of any service or obligation under this Agreement is prevented, restricted, delayed or interfered with by labor disputes, strikes, acts of God, floods, lightning, severe weather, shortages of materials, rationing, utility, earthquakes, war, revolution, civil commotion, terrorism, acts of public enemies, blockage, embargo, patent disputes or communication failures, then such Party shall be excused from the performance to the extent of the prevention, restriction, delay or interference, provided that such Party notifies the other Party hereto of the cause of such delay as soon as reasonably practicable after the beginning thereof.



IN WITNESS WHEREOF, by signing the Application, Company accepts and agrees to be bound by the terms of this Agreement as of the Effective Date, *under the condition that*, as of the Effective Date, Company has received notice from Evolve that (i) Company's Application has been accepted and (ii) Company has been assigned a processing identification number. **If this condition is not fulfilled, this Agreement shall have no force or effect on Company or Evolve.** Company agrees that receipt of such notice and number from Evolve shall indicate for all purposes that Evolve and Company agree to be bound by the terms of this Agreement as of the Effective Date, without the need for their respective signatures on this Agreement.

IN WITNESS WHEREOF, the parties hereto have executed that Agreement as of the date set forth below.

Raven Agriculture LLC
_____
Company Name

_____
Authorized Signer

Hector Bove
_____
Print Name

9/19/2016
_____
Date

Evolve Bank & Trust

_____
Authorized Signer

Blake Johnson
_____
Print Name

09-02-2016
_____
Date

111 East Huntington Avenue, Suite A, Jonesboro, Arkansas 72401
Office: 870-933-2490   844-226-4876   bbanking@getevolved.com
May 2014 Contract Revision

16

Exhibit 7

SmartPay Manager

Evolve Bank & Trust

**Reference Number**

GCVDB5VKLA2

**Front of Check**

ERWIN
KEITH
INC.
1529 HIGHWAY 193
WYNNE, AR 72396
PHONE (870) 238-2079

Bank of America

80-1786
615

11289

DATE 10/10/2019   AMOUNT

PAY
TO THE
ORDER OF

$   $13,920.26

Thirteen thousand Nine Hundred Twenty Dollars and twenty-six Cents      DOLLARS

RAVEN AGRICULTURE LLC & FARM CREDIT MIDSOUTH
2784 HWY 163
CHERRY VALLEY, AR 72324

ERWIN-KEITH, INC.

MEMO      AUTHORIZED SIGNATURE

⑈011289⑈

**Back of Check**

*SmartPay* Manager

Evolve Bank & Trust

**Reference Number**

G6M8C5VKLA4

**Front of Check**

CGB WEST MEMPHIS
896 SOUTH WALKER
WEST MEMPHIS, AR 72301
870-733-3700

JPMorgan Chase Bank, N.A.
Columbus, OH

98-1844
441

CHECK DATE
10-17-2019

CHECK NO
0088221291

EXACTLY    Nine thousand four hundred twenty and sixty-one/100

CHECK AMOUNT
$***9,420.61

PAY TO
THE
ORDER
OF

TOGO FARMING LLC & FARM CREDIT MIDSOUTH
2784 HWY 163

CHERRY VALLEY     AR     72324-8904

⑈0088221291⑈

**Back of Check**

IMAGE ELECTRONICALLY PRESENTED

DO NOT WRITE, SIGN OR STAMP BELOW THIS LINE

VOID VOID VOID

7/23/2020

*SmartPay* Manager

Evolve Bank & Trust

**Reference Number**

7TM2C5VKLA5

**Front of Check**



**Back of Check**

SmartPay Manager

Evolve Bank & Trust

Reference Number

PXYVRWXKLA4

Front of Check

ERWIN KEITH INC.
1520 HIGHWAY 193
WYNNE, AR 72396
PHONE (870) 238-2079

progeny™

Bank of America.

90-1788
815

11602

DATE 11/21/2019    AMOUNT

PAY TO THE ORDER OF

$ $228,047.66

Two Hundred Twenty-Eight thousand Forty-Seven Dollars and sixty-six Cents

DOLLARS

ERWIN-KEITH, INC.

DELTA BAY AGRI LLC & FARM CREDIT MIDSOUTH
2784 HWY 163
CHERRY VALLEY, AR 72324

AUTHORIZED SIGNATURE

MEMO

⑈011602⑈

Back of Check

SmartPay Manager

Evolve Bank & Trust

Reference Number

D7PQP84LLA3

Front of Check

TO VERIFY AUTHENTICITY SEE REVERSE SIDE FOR DESCRIPTION OF THE SECURITY FEATURES

**CGB WEST MEMPHIS**
896 SOUTH WALKER
WEST MEMPHIS, AR 72301
870-733-3700

JPMorgan Chase Bank, N.A
Columbus, OH

50-1944
441

| | CHECK DATE | CHECK NO |
|---|---|---|
| | 01-01-2020 | 0088223337 |

EXACTLY    Nine thousand seven hundred ninety-seven and forty-nine/100

CHECK AMOUNT
$****9,797.49

PAY TO
THE
ORDER
OF

**DELTA BAY AGRI LLC & FARM CREDIT MIDSOUTH**
2784 HWY 163

CHERRY VALLEY      AR      72324-8904

AUTHORIZED SIGNATURE(S)

⑈0088223337⑈

Back of Check

SmartPay Manager

Evolve Bank & Trust

**Reference Number**

33BHW84LLA3

**Front of Check**



**Back of Check**



7/7/2020

Manage Customers

**SmartPay** Manager

Evolve Bank & Trust

**Reference Number**

T9D9DBLLLA1

**Front of Check**



**Back of Check**



**SmartPay** Manager

Evolve Bank & Trust

Reference Number

DFMFBBLLLA3

Front of Check



Back of Check



 Manager

Evolve Bank & Trust

**Reference Number**

1QMVTLHLLA1

**Front of Check**



**Back of Check**



**SmartPay Manager**

Evolve Bank & Trust

**Reference Number**

KG2W6R6LLA5

**Front of Check**



ERWIN KEITH INC.
1529 HIGHWAY 193
WYNNE, AR 72396
PHONE (870) 238-2079

Progeny

Bank of America

81-7
820

103138

3/11/2020

PAY TO THE ORDER OF: Delta Bay Agri & Farm Credit Midsouth

$ **57,571.74

Fifty-Seven Thousand Five Hundred Seventy-One and 74/100************************************************** DOLLARS

Delta Bay Agri & Farm Credit Midsouth
2784 Hwy 163
Cherry Valley, AR 72324

ERWIN-KEITH, INC.

AUTHORIZED SIGNATURE

MEMO    MG St 000127-P

⑈103138⑈

**Back of Check**



03122020 ELECTRONICALLY PRESENTED

SmartPay Manager

Evolve Bank & Trust

**Reference Number**

VJ15CXYJLA3

**Front of Check**

CGB WEST MEMPHIS
896 SOUTH WALKER
WEST MEMPHIS, AR 72301

JPMorgan Chase Bank, N A
Columbus, OH

CHECK DATE
01-01-2019

CHECK NO
0088217669

EXACTLY    Ten thousand eight hundred seventy-seven and five/100

CHECK AMOUNT
$****10,877.05

PAY TO
THE
ORDER
OF

DELTA BAY AGRI LLC & FARM CREDIT MIDSOUTH
2784 HWY 163

CHERRY VALLEY    AR    72324-8904

⑈0088217669⑈

**Back of Check**

DEPOSITED ELECTRONICALLY

ENDORSE Evolve Bank & Trust
For Deposit Only

1823446

Exhibit 8

# BUTLER | SNOW

August 21, 2020

**Via Certified U.S. Mail Return Receipt Requested &**
**E-Mail hbove@ravenagri.com**

Hector Bove
Delta Bay Investments, LLC
2784 Highway 163
Cherry Valley, AR 72324

**Re:  Demand for Repayment of Loan Nos. ▇5624 and ▇6291**

Mr. Bove:

On behalf of Evolve Bank & Trust ("Evolve"), I write to provide notice that Evolve is exercising its right to demand immediate repayment in full of the outstanding principal and accrued interest for loan numbers ▇5624 and ▇6291.  If you are represented by counsel, please let me know who they are, and I will be happy to communicate directly with them.

On December 16, 2019, you borrowed $208,000 from Evolve executing Promissory Note, Loan No. ▇5624.  (Attached hereto as <u>Ex. 1</u>).  The loan proceeds were utilized by Delta Bay Investments, LLC and you to purchase the property located at 5 CR 3951, Wynne, AR 72396.

On February 14, 2020, you borrowed $345,960 from Evolve executing Promissory Note, Loan No. ▇6291.  (Attached hereto as <u>Ex. 2</u>).  The loan proceeds were utilized by Delta Bay Investments, LLC to purchase the properties located at 5000, 5004 and 5008 Bedrock Drive, Jonesboro, AR 72404.

In the payment section of each note, you agreed as follows, "Borrower will pay this loan in full immediately upon Lender's demand."  Given the fraudulent check activity associated with your accounts and the undisclosed debt owed to Helena Chemicals, Evolve no longer wants to continue with a banking relationship with you and thus exercised its rights to call these notes due.

Attached as <u>Exhibit 3</u> is an accounting showing as of Friday, August 21, 2020 the amounts owed on these two loans.  Pursuant to the terms of the promissory notes, you are directed and demanded to repay these amounts in full.  Even though these amounts are immediately due, Evolve will grant you thirty (30) days to secure replacement financing or otherwise obtain funds sufficient to repay these loans in full.  If Evolve does not receive $545,334.26 in immediately available funds on or before September 21, 2020, Evolve will take legal action against you and will initiate foreclosure proceedings.

*Post Office Box 171443*
*Memphis, TN 38187-1443*

**DANIEL W. VAN HORN**
901.680.7331
danny.vanhorn@butlersnow.com

*Crescent Center*
*6075 Poplar Avenue, Suite 500*
*Memphis, TN 38119*

*T 901.680.7200 • F 901.680.7201 • www.butlersnow.com*
BUTLER SNOW LLP

You have an obligation to maintain the collateral which secures these loans. Please provide immediate proof of insurance on these properties and take all action necessary to maintain them until such time as you satisfy your debt under these loans or the properties are foreclosed upon. In no event should you allow the collateral to become impaired, suffer damage or waste. In the event Evolve forecloses on these properties and they are damaged in any way, then the costs of repairs will be additional damages chargeable to you.

Sincerely,

Danny Van Horn

Cc:   Rusty Barham, Esq.
      John Freeman
      Scott Stafford
54309251.v1

**Exhibit 1**

# PROMISSORY NOTE

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|-----------|-----------|----------|---------|-------------|---------|---------|----------|
| $208,000.00 | 12-16-2019 | 12-16-2024 | ****5624 | 021 | ****** | RBJ | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

| Borrower: | HECTOR BOVE<br>2784 HWY 163<br>CHERRY VALLEY, AR 72324 | Lender: | Evolve Bank & Trust<br>Jonesboro LPO<br>111 East Huntington<br>Suite A<br>Jonesboro, AR 72401<br>(870) 933-2480 |  |
|---|---|---|---|---|

**Principal Amount: $208,000.00**      **Interest Rate: 5.350%**      **Date of Note: December 16, 2019**

**PROMISE TO PAY.** HECTOR BOVE ("Borrower") promises to pay to Evolve Bank & Trust ("Lender"), or order, in lawful money of the United States of America, the principal amount of Two Hundred Eight Thousand & 00/100 Dollars ($208,000.00), together with interest on the unpaid principal balance from December 16, 2019, calculated as described in the "INTEREST CALCULATION METHOD" paragraph using an interest ratio of 5.350% per annum based on a year of 360 days, until paid in full. The interest rate may change under the terms and conditions of the "INTEREST AFTER DEFAULT" section.

**PAYMENT.** Borrower will pay this loan in full immediately upon Lender's demand. If no demand is made, Borrower will pay this loan in 59 regular payments of $1,413.24 each and one irregular last payment estimated at $176,071.83. Borrower's first payment is due January 16, 2020, and all subsequent payments are due on the same day of each month after that. Borrower's final payment will be due on December 16, 2024, and will be for all principal and all accrued interest not yet paid. Payments include principal and interest. Unless otherwise agreed or required by applicable law, payments will be applied first to any late charges; then to any unpaid collection costs; then to any accrued unpaid interest; and then to principal.

**INTEREST CALCULATION METHOD.** Interest on this Note is computed on a 30/360 basis; that is, with the exception of odd days before the first full payment cycle, monthly interest is calculated by applying the ratio of the interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by a month of 30 days. Interest for the odd days before the first full month is calculated on the basis of the actual days and a 360-day year. All interest payable under this Note is computed using this method.

**RECEIPT OF PAYMENTS.** All payments must be made in U.S. dollars and must be received by Lender at:

Evolve Bank & Trust
Loan Operations
6070 Poplar Ave. Suite 200
Memphis, TN 38119

All payments must be received by Lender consistent with any written payment instructions provided by Lender.

**PREPAYMENT.** Borrower agrees that all loan fees and other prepaid finance charges are earned fully as of the date of the loan and will not be subject to refund upon early payment (whether voluntary or as a result of default), except as otherwise required by law. Except for the foregoing, Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due and may result in Borrower's making fewer payments. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: Evolve Bank & Trust, Loan Operations, 6070 Poplar Ave. Suite 200 Memphis, TN 38119.

**LATE CHARGE.** If a payment is 15 days or more late, Borrower will be charged 5.000% of the regularly scheduled payment.

**INTEREST AFTER DEFAULT.** Upon default, including failure to pay upon final maturity, the total sum due under this Note will continue to accrue interest at the interest rate under this Note.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

**Payment Default.** Borrower fails to make any payment when due under this Note.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**Default in Favor of Third Parties.** Borrower or any Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's property or Borrower's ability to repay this Note or perform Borrower's obligations under this Note or any of the related documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Death or Insolvency.** The death of Borrower or the dissolution or termination of Borrower's existence as a going business, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party

**PROMISSORY NOTE**
**(Continued)**

Loan No: 545624

Page 2

of any of the Indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the Indebtedness evidenced by this Note.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance under this Note and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's reasonable attorneys' fees and Lender's legal expenses whether or not there is a lawsuit, including reasonable attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law.

**GOVERNING LAW. This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Arkansas without regard to its conflicts of law provisions. This Note has been accepted by Lender in the State of Arkansas.**

**CHOICE OF VENUE.** If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of Craighead County, State of Arkansas.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the Indebtedness against any and all such accounts, and, at Lender's option, to administratively freeze all such accounts to allow Lender to protect Lender's charge and setoff rights provided in this paragraph.

**COLLATERAL.** Borrower acknowledges this Note is secured by the following collateral described in the security instruments listed herein:

(A) a Mortgage dated December 16, 2019, to Lender on real property located in CROSS County, State of Arkansas.

(B) an Assignment of All Rents to Lender on real property located in CROSS County, State of Arkansas.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**NOTIFY US OF INACCURATE INFORMATION WE REPORT TO CONSUMER REPORTING AGENCIES.** Borrower may notify Lender if Lender reports any inaccurate information about Borrower's account(s) to a consumer reporting agency. Borrower's written notice describing the specific inaccuracy(ies) should be sent to Lender at the following address: Evolve Bank & Trust Loan Operations 6070 Poplar Ave. Suite 200 Memphis, TN 38119.

**SMALL BUSINESS JOBS ACT OF 2010, SECTION 4107(D)(2).** As required by Section 4107(d)(2) of the Small Business Jobs Act of 2010, Borrower hereby certifies to Lender that the principals of Borrower and its affiliates have not been convicted of, or pleaded nolo contendre to, a sex offense against a minor (as such terms are defined in Section 111 of the Sex Offender Registration and Notification Act (41 U.S.C. 16911)).

**GENERAL PROVISIONS.** This Note is payable on demand. The inclusion of specific default provisions or rights of Lender shall not preclude Lender's right to declare payment of this Note on its demand. If any part of this Note cannot be enforced, this fact will not affect the rest of the Note. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several.

**PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE. BORROWER AGREES TO THE TERMS OF THE NOTE.**

BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.

BORROWER:

X _____
HECTOR BOVE

LaserPro, Ver 18.1.0.046 Copr. Finastra USA Corporation 1997, 2019   All Rights Reserved.   - AR  O:\CFI\LPL\D20.FC  TR-7568  PR-01

**Exhibit 2**

# PROMISSORY NOTE

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $345,960.00 | 02-14-2020 | 02-14-2025 | [redacted]6291 | 021 | [redacted] | RBJ | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** HECTOR BOVE
2784 HIGHWAY 153
CHERRY VALLEY, AR 72324

**Lender:** Evolve Bank & Trust
Jonesboro LPO
111 East Huntington
Suite A
Jonesboro, AR 72401
(870) 933-2480

**Principal Amount: $345,960.00** **Interest Rate: 5.000%** **Date of Note: February 14, 2020**

**PROMISE TO PAY.** HECTOR BOVE ("Borrower") promises to pay to Evolve Bank & Trust ("Lender"), or order, in lawful money of the United States of America, the principal amount of Three Hundred Forty-five Thousand Nine Hundred Sixty & 00/100 Dollars ($345,960.00), together with interest on the unpaid principal balance from February 14, 2020, calculated as described in the "INTEREST CALCULATION METHOD" paragraph using an interest rate of 5.000% per annum based on a year of 360 days, until paid in full. The interest rate may change under the terms and conditions of the "INTEREST AFTER DEFAULT" section.

**PAYMENT.** Borrower will pay this loan in full immediately upon Lender's demand. If no demand is made, Borrower will pay this loan in 59 regular payments of $2,283.18 each and one irregular last payment estimated at $291,003.87. Borrower's first payment is due March 14, 2020, and all subsequent payments are due on the same day of each month after that. Borrower's final payment will be due on February 14, 2025, and will be for all principal and all accrued interest not yet paid. Payments include principal and interest. Unless otherwise agreed or required by applicable law, payments will be applied first to any late charges; then to any unpaid collection costs; then to any accrued unpaid interest; and then to principal.

**INTEREST CALCULATION METHOD.** Interest on this Note is computed on a 30/360 basis; that is, with the exception of odd days before the first full payment cycle, monthly interest is calculated by applying the ratio of the interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by a month of 30 days. Interest for the odd days before the first full month is calculated on the basis of the actual days and a 360-day year. All interest payable under this Note is computed using this method.

**RECEIPT OF PAYMENTS.** All payments must be made in U.S. dollars and must be received by Lender at:

Evolve Bank & Trust
Loan Operations
6070 Poplar Ave. Suite 200
Memphis, TN 38119

All payments must be received by Lender consistent with any written payment instructions provided by Lender.

**PREPAYMENT.** Borrower agrees that all loan fees and other prepaid finance charges are earned fully as of the date of the loan and will not be subject to refund upon early payment (whether voluntary or as a result of default), except as otherwise required by law. Except for the foregoing, Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due and may result in Borrower's making fewer payments. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: Evolve Bank & Trust, Loan Operations, 6070 Poplar Ave. Suite 200 Memphis, TN 38119.

**LATE CHARGE.** If a payment is 15 days or more late, Borrower will be charged 5.000% of the regularly scheduled payment.

**INTEREST AFTER DEFAULT.** Upon default, including failure to pay upon final maturity, the total sum due under this Note will continue to accrue interest at the interest rate under this Note.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

**Payment Default.** Borrower fails to make any payment when due under this Note.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**Default in Favor of Third Parties.** Borrower or any Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's property or Borrower's ability to repay this Note or perform Borrower's obligations under this Note or any of the related documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Death or Insolvency.** The death of Borrower or the dissolution or termination of Borrower's existence as a going business, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party

## PROMISSORY NOTE
### (Continued)

| Loan No: 546291 | Page 2 |
| --- | --- |

of any of the Indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes Incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the Indebtedness evidenced by this Note.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance under this Note and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's reasonable attorneys' fees and Lender's legal expenses whether or not there is a lawsuit, including reasonable attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law.

**GOVERNING LAW.** This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Arkansas without regard to its conflicts of law provisions. This Note has been accepted by Lender in the State of Arkansas.

**CHOICE OF VENUE.** If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of Craighead County, State of Arkansas.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the Indebtedness against any and all such accounts, and, at Lender's option, to administratively freeze all such accounts to allow Lender to protect Lender's charge and setoff rights provided in this paragraph.

**COLLATERAL.** Borrower acknowledges this Note is secured by the following collateral described in the security instruments listed herein:

(A) a Mortgage dated February 14, 2020, to Lender on real property located in CRAIGHEAD County, State of Arkansas.

(B) an Assignment of All Rents to Lender on real property located in CRAIGHEAD County, State of Arkansas.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**NOTIFY US OF INACCURATE INFORMATION WE REPORT TO CONSUMER REPORTING AGENCIES.** Borrower may notify Lender if Lender reports any inaccurate information about Borrower's account(s) to a consumer reporting agency. Borrower's written notice describing the specific inaccuracy(ies) should be sent to Lender at the following address: Evolve Bank & Trust Loan Operations 6070 Poplar Ave. Suite 200 Memphis, TN 38119.

**SMALL BUSINESS JOBS ACT OF 2010, SECTION 4107(D)(2).** As required by Section 4107(d)(2) of the Small Business Jobs Act of 2010, Borrower hereby certifies to Lender that the principals of Borrower and its affiliates have not been convicted of, or pleaded nolo contendre to, a sex offense against a minor (as such terms are defined in Section 111 of the Sex Offender Registration and Notification Act (41 U.S.C. 16911)).

**GENERAL PROVISIONS.** This Note is payable on demand. The inclusion of specific default provisions or rights of Lender shall not preclude Lender's right to declare payment of this Note on its demand. If any part of this Note cannot be enforced, this fact will not affect the rest of the Note. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this Note without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several.

**PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE. BORROWER AGREES TO THE TERMS OF THE NOTE.**

BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.

BORROWER:

X _____
HECTOR IBOVE

Exhibit 3

EVOLVE
*bank & trust*

August 21, 2020

### PAYOFF STATEMENT

Loan: ██6291
Borrower: HECTOR E BOVE
Collateral:
Payoff Date: 08/24/2020

This statement reflects the total amount due under the terms of the note. If this obligation is not paid in full by this date, you should obtain an updated payoff amount. <u>Please contact us prior to closing for verification of final payoff figures.</u>

A detailed breakdown of the amount due is shown below. If you have questions regarding this payoff, please contact our Loan Operations department at 901-624-5500 ext. 5626.

| | |
|---|---|
| Current Balance | $339,845.13 |
| Accrued Interest | $1,276.12 |
| Escrow in Payoff | $0.00 |
| Escrow Interest Withholding | $0.00 |
| Late Charges | $0.00 |
| Prepayment Penalty | $0.00 |
| Other Charges | $0.00 |
| **Total Amount Due** | **$341,121.25** |

Please send all payoff funds to Evolve Bank & Trust, Attn: Loan Operations, 6070 Poplar Avenue, Suite 200, Memphis, TN 38119.

Please note that if this loan has a quotable per diem interest, then funds received after 08/24/2020 will be subject to an additional $47.20071 of interest per day. If this loan is a variable rate loan, this payoff quote assumes no rate change will occur prior to the payoff date, as a rate change could increase or decrease the final payoff. <u>Please contact us prior to closing for verification of final payoff figures.</u> Payoffs are not posted on weekends or holidays; interest will be added to the account for these days.

Thank you,

Evolve Bank & Trust

# E V O L V E
### bank & trust

August 21, 2020

## PAYOFF STATEMENT

Loan: ●5624
Borrower: HECTOR E BOVE
Collateral:
Payoff Date: 08/24/2020

This statement reflects the total amount due under the terms of the note. If this obligation is not paid in full by this date, you should obtain an updated payoff amount. Please contact us prior to closing for verification of final payoff figures.

A detailed breakdown of the amount due is shown below. If you have questions regarding this payoff, please contact our Loan Operations department at 901-624-5500 ext. 5626.

| | |
|---|---:|
| Current Balance | $203,395.69 |
| Accrued Interest | $817.32 |
| Escrow in Payoff | $0.00 |
| Escrow Interest Withholding | $0.00 |
| Late Charges | $0.00 |
| Prepayment Penalty | $0.00 |
| Other Charges | $0.00 |
| **Total Amount Due** | **$204,213.01** |

Please send all payoff funds to Evolve Bank & Trust, Attn: Loan Operations, 6070 Poplar Avenue, Suite 200, Memphis, TN 38119.

Please note that if this loan has a quotable per diem interest, then funds received after 08/24/2020 will be subject to an additional $30.22685 of interest per day. If this loan is a variable rate loan, this payoff quote assumes no rate change will occur prior to the payoff date, as a rate change could increase or decrease the final payoff. Please contact us prior to closing for verification of final payoff figures. Payoffs are not posted on weekends or holidays; interest will be added to the account for these days.

Thank you,

Evolve Bank & Trust